# The Commonwealth ex relatione *against* Collins.

The amendments to the constitution of 1790, were adopted at the time when the result of the vote of the electors thereon was ascertained from the official returns, and made known by the speaker of the senate; and after that period, no appointment to judicial office could be made by the governor, without the advice and consent of the senate.

*QUO WARRANTO.*—On the twenty-third day of May, one thousand eight hundred and thirty-nine, Mr Johnson, the attorney-general, filed in the supreme court a suggestion as follows:

Pennsylvania, ss.—Be it remembered, that at a supreme court held at Harrisburg, in and for the middle district of Pennsylvania, on the twenty-third day of May, in the year of our Lord one thousand eight hundred and thirty-nine, comes Ovid F. Johnson, attorney-general of the said commonwealth, and on behalf of said commonwealth gives the said court here to know and be informed, that by the amended constitution of the said commonwealth, which was agreed to in convention on the twenty-second day of February,

[The Commonwealth ex relatione v. Collins.]

in the year of our Lord one thousand eight hundred and thirty-eight, and adopted, ratified and confirmed by the citizens of the said commonwealth on the ninth day of October now last past, and the fact of its being so adopted duly declared and proclaimed by the governor on the eleventh day of December, in the year of our Lord one thousand eight hundred and thirty-eight, it is provided in the second section of the fifth article of said constitution, as follows, to wit: "The judges of the supreme court, of the several courts of common pleas, and of such other courts of record as are or shall be established by law, shall be nominated by the governor, and by and with the consent of the senate appointed and commissioned by him. The judges of the supreme court shall hold their offices for the term of fifteen years, if they shall so long behave themselves well. The president judges of the several courts of common pleas, and of such other courts of record as are or shall be established by law; and all other judges required to be learned in the law, shall hold their offices for the term of ten years, if they shall so long behave themselves well. The associate judges of the courts of common pleas shall hold their offices for the term of five years, if they shall so long behave themselves well. But for any reasonable cause, which shall not be sufficient ground of impeachment, the governor may remove any of them, on the address of two-thirds of each branch of the legislature. The judges of the supreme court and the presidents of the several courts of common pleas shall, at stated times, receive for their services an adequate compensation to be fixed by law, which shall not be diminished during their continuance in office, but they shall receive no fees or perquisites of office, nor hold any other office of profit under this commonwealth." That in the seventh section of the schedule of said constitution, it is provided as follows, to wit: "The commissions of the presidents of the several judicial districts, and of the associate law judges of the first judicial district, shall expire as follows: The commissions of one half of those who shall have held their offices ten years or more at the adoption of the amendments to the constitution, shall expire on the twenty-seventh day of February, one thousand eight hundred and thirty-nine, the commissions of the other half of those who shall have held their offices ten years or more at the adoption of the amendments to the constitution, shall expire on the twenty-seventh day of February, one thousand eight hundred and forty-two; the first half to embrace those whose commissions shall bear the oldest date. The commissions of all the remaining judges who shall not have held their offices for ten years at the adoption of the amendments to the constitution, shall expire on the twenty-seventh day of February next after the end of ten years from the date of their commissions." That at the adoption of said amendments to said constitution, to wit, on the ninth day of October now last past, Oristus Collins, Esq., of the county of Lancaster, held the office of president judge of the second judicial district of Pennsylvania,

[The Commonwealth ex relatione v. Collins.]

composed of the county of Lancaster, under and by virtue of a commission bearing date the eighth day of August, in the year one thousand eight hundred and thirty-six, duly issued by Joseph Ritner, Esq., governor of the said commonwealth, and continued to hold said office and exercise the duties thereof from the time of his said appointment up to the twenty-sixth day of December, in the year one thousand eight hundred and thirty-eight. That on the said twenty-sixth day of December last named, the said Oristus Collins resigned the commission by virtue of which he held and exercised the office of president judge of the said district; and on the twenty-seventh day of December, the day following the date of his said resignation, was again commissioned to the same office he had before held, by Joseph Ritner, Esq., then being governor of the said commonwealth of Pennsylvania, under and in virtue of the fifth section of the schedule to the said amended constitution. That notwithstanding the resignation of the commission held by the said Oristus Collins, at the adoption of the amendments to said constitution, as above mentioned, and the foregoing provisions of the said amended constitution, and the second section of the schedule of said amended constitution, which is in the words following, to wit: " The alterations and amendments in the said constitution shall take effect from the first day of January, eighteen hundred and thirty-nine," the said Oristus Collins continues to hold, use and exercise the office of president judge of the second judicial district of Pennsylvania, without warrant or lawful authority for so doing. Whereupon the said attorney-general, in behalf of the commonwealth of Pennsylvania, gives the said court here to understand and be informed that Oristus Collins, of the county of Lancaster, in said commonwealth, from and since the first day of January last past, hath used and exercised, and still doth use and exercise the office of president judge of the second judicial district in the said commonwealth, without any warrant or lawful and constitutional authority therefor. Which said office and the powers, authorities, emoluments and franchises thereto belonging and appertaining, the said Oristus Collins, during all the time aforesaid, hath usurped and still doth usurp upon the government of the said commonwealth, to the great damage and prejudice of the lawful authority of the same.

Wherefore the said attorney-general makes suggestion and complaint herein, and for due process of law against the said Oristus Collins in this behalf to be made, to answer by what warrant he claims to have, use, exercise and enjoy, the aforesaid office.

Whereupon the court awarded a writ of *quo warranto*, returnable on the 10th of June, which was issued and returned served. And on the said day, the said Oristus Collins filed the following plea:

And now, June 10, 1839, the said Oristus Collins comes into court by Thaddeus Stevens and Samuel Parke, his attorneys, and pro-

[The Commonwealth ex relatione v. Collins.]

testing that " the adoption of the amendments to the constitution," did not take place at the general election held on the 9th of October 1838, as is in various places alleged in the suggestion filed, on which this *quo warranto* was issued, but only a vote was then taken for the purpose of ascertaining the sense of the citizens " on the expediency of adopting the amendments so agreed upon by the convention," which resulted in a majority in favour of the expediency of the adoption or engrafting said amendments into the constitution of this state, at the time and in the manner specified in said amendments, viz. on the 1st day of January 1839; for plea in this behalf says, that he claims to exercise and enjoy the office of president judge of the second judicial district of Pennsylvania composed of the county of Lancaster, under and by virtue of a commission in due form of law, bearing date the 27th day of December, in the year of our Lord one thousand eight hundred and thirty-eight, under the great seal of the commonwealth aforesaid, signed and issued by his excellency Joseph Ritner, Esq., then being governor of the said commonwealth, according to the constitution and laws of said commonwealth to fill the said office of President Judge aforesaid, which was then vacant, which said commission duly signed and sealed, bearing date as aforesaid, the said Oristus brings here into court. And the said Oristus further says that afterwards, to wit, on the 29th day of December aforesaid, he duly accepted the said commission, and on the same day duly and according to the constitution and laws of this commonwealth, took and subscribed the oath required by the said constitution and laws, and entered upon the duties of the said office of president judge as aforesaid, and has continued thence hitherto continually to perform the same duties, and still does perform the said duties according to the said constitution and laws, under and by virtue of the said appointment and commission; without this, that the said Oristus Collins, the office, liberties, privileges and franchises in said suggestion mentioned, or any of them, from and since the 1st day of January last past, hath usurped and still doth usurp upon the government of the said commonwealth, in the manner and form as by the said suggestion is supposed. All which said Oristus is ready to verify as the court shall award. Wherefore he prays judgment, and that the said office, liberties and privileges by him above claimed, may be adjudged and allowed to him, and that he may be dismissed and discharged by the court hereof, and from the premises above charged on him, &c.

The commonwealth craves Oyer of the said alleged commission in the defendant's plea set forth, and the same is granted by the court in *hæc verba*.

And thereupon, Ovid F. Johnson, attorney-general of the said commonwealth, who for the said commonwealth prosecutes in this behalf, comes and saith, that the said plea of the said Oristus Collins, and the matter therein contained in manner and form as the

same are above pleaded and set forth, are not sufficient in law to bar or preclude the said commonwealth from having or maintaining the aforesaid proceeding thereof against him, the said Oristus Collins, and that the said commonwealth is not bound by the law of the land to answer the same, and this the said commonwealth is ready to verify. Wherefore for the want of a sufficient plea in this behalf, the said attorney-general prays judgment for the said commonwealth, and that the said defendant be ousted and altogether excluded from the said office of president judge aforesaid.

And the said Ovid F. Johnson, attorney-general, as aforesaid, according to the form of the statute in such case made and provided, states and shows to the court the following causes of demurrer to the said plea:

1. That the said plea by not denying, admits all the facts set forth in the said suggestion, and the commission under which the said Oristus Collins claims to hold the office, being issued to fill an alleged vacancy created by the resignation of the same individual on the day preceding that on which the said alleged commission issued, the acting governor of the commonwealth had no right to commission him to hold the said office "so long as he should behave himself well." And he could not, under such commission, exercise the duties of the said office from and after the 1st day of January, one thousand eight hundred and thirty-nine.

2. That the said plea is in other respects uncertain, informal, and insufficient, &c.

*J. M. Porter* and *Ovid F. Johnson*, attorney-general, for the relators.

*T. Stevens* and *S. Parke*, for the respondent.

The opinion of the Court was delivered by

KENNEDY, J.—Under the constitution of 1790, the tenure of the judges of the courts therein specially mentioned was during good behaviour. By the amendments, however, as they are called, which were agreed on and proposed by the convention of 1838, and approved by a majority of the electors, who voted on the question whether they should become part of the constitution or not, at the general election in that year, the tenure of the judges of the supreme court was changed to a term of fifteen years; the president judges of the several courts of common pleas, and of such other courts of record as were or should be established by law, and all other judges required to be learned in the law, to a term of ten years, subject still, however, to the condition of each behaving himself well. And further, instead of being appointed by the governor, as under the constitution of 1790, they are, under the amendments, to be nominated by the governor, and by and with the consent of the senate, appointed and commissioned by him. By the second section in the schedule, which forms part of the amendments, it is

declared that the alterations and amendments shall take effect from the first day of January, eighteen hundred and thirty nine; and though it is declared by the third section of the schedule, that the clauses, sections, and articles of the constitution of 1790, which still remain unaltered, shall continue to be construed and have effect, as if the said constitution had not been amended; yet the judicial tenure being expressly altered by the amendments, the constitution of 1790, therefore, became null and void as to this particular; and all the judges within the state, on the first day of January eighteen hundred and thirty-nine, who then held their offices and commissions under it during good behaviour, ceased to be judges, by reason of the tenure whereby they held their offices having become terminated, unless some provision can be found to have been made in the amendments to counteract and prevent this effect.   The seventh section of the schedule is the only part of the amendments, then, which contains any provision whatever in relation to this point, that can by any possible construction be made to apply to the defendant's case.   It is in the following words: " The commissions of the president judges of the several judicial districts, and of the associate law judges of the first judicial district, shall expire as follows: the commissions of one-half of those who shall have held their offices ten years or more, *at the adoption* of the amendments to the constitution, shall expire on the twenty-seventh day of February, one thousand eight hundred and thirty-nine; the commissions of the other half of those who shall have held their offices ten years or more, *at the adoption* of the amendments to the constitution, shall expire on the twenty-seventh day of February, one thousand eight hundred and forty-two; the first half to embrace those whose commissions shall bear the oldest date.   The commissions of all the *remaining* judges, who shall *not have* held *their* offices for ten years, *at the adoption* of the amendments to the constitution, shall expire on the twenty-seventh day of February next after the end of ten years from the date of *their* commissions.".   All the judges mentioned in this section have their commissions, which were granted under the authority of the constitution of 1790, extended by necessary implication beyond the first day of January, one thousand eight hundred and thirty-nine, when otherwise they would have been determined; some to the twenty-seventh day of February, one thousand eight hundred and thirty-nine, some to the twenty-seventh day of February, one thousand eight hundred and forty-two, and the rest to the twenty-seventh day of February next after the end of ten years from the date of their commissions. Now, according to the plain reading of this section, it would seem as if no commissions were provided for or continued in force by it, excepting such as were in being *at the adoption* of the amendments to the constitution.   Hence, it becomes necessary to examine and ascertain, in the first place, at what time the amendments must be considered as having been *adopted,* agreeably to the meaning

of the phrase, "at the adoption of the amendments to the constitution;" or at least to see whether the commission of the defendant was in being at or before the latest point of time at which the adoption of the amendments to the constitution must be considered as having taken place. The counsel for the defendant, aware of the important bearing which the answer to this question would have upon their client's case, endeavoured to show that it must be taken to mean the first day of January, one thousand eight hundred and thirty-nine, otherwise the amendments would have a most unreasonable, unjust, and oppressive operation. It was alleged that it was reasonable, if not necessary, to suppose that the convention, as often as they have, in the amendments, referred to the time when they should be adopted, by mentioning it in the same manner already stated, meant to designate the same point of time throughout. And if so, that it is clear from the ninth section of the first article, that the time of the amendments being agreed to finally by the convention, as was first suggested by the counsel for the commonwealth, cannot be the time that was intended; because, in speaking there of the senators who shall " be elected at the *first* general election *after the adoption* of the amendments to the constitution," it would seem, by taking the whole of the section into view, that the general election of eighteen hundred and thirty-nine was intended to be designated, and not the general election of eighteen hundred and thirty-eight, which was the first election that was to be held after the amendments were agreed to by the convention. So again by the tenth section of the sixth article, it is declared that " any person who shall, *after the adoption* of the amendments *proposed by this convention* to the constitution, fight a duel, or send a challenge for that purpose, or be aider or abettor in fighting a duel, shall be deprived of the right of holding any office of honour or profit in this state, and shall be punished otherwise in such manner as is or may be prescribed by law." Here it is first said, that the convention have, in terms the meaning of which cannot be mistaken, shown most clearly that they did not consider their agreeing on the amendments as the *adoption* of them, but merely a *proposing* of them to the people, for them to decide whether they should be *adopted* or not. And further, from the terms of this section it is argued, that the convention could not have intended that a citizen should be disfranchised for fighting a duel, or sending a challenge for that purpose; or for aiding or abetting therein, before it was possible for him to know that there was any law, or rule of civil conduct in force imposing such a penalty; that such a principle would savour of the very highest degree of oppression and injustice. Then, in order to avoid such injustice, the amendments cannot be considered as having been adopted until after the result of the vote given in regard to them, by the electors at the general election, in October 1838, became publicly known. But this result was not and could not be accu-

VIII.—2 D*

rately ascertained and known before the eleventh day of December next thereafter, when the speaker of the senate, in conformity to the act of assembly, passed in this behalf, ascertained it from the returns thereof, made by the judges of the general election, from the several counties of the state. Then, again, it is still further maintained, that the bare ascertainment of the vote of the electors, approving of the amendments *proposed* by the convention, cannot, with any colour of propriety, be regarded as the adoption of the amendments; that it could, at most, only amount to a promulgation of the vote given thereon; so that the citizens throughout the state might become informed thereof before the first day of January, eighteen hundred and thirty-nine, when the amendments, according to the express declaration contained in the second section of the schedule were to take effect. This, therefore, as it is contended by the counsel for the defendant, must be taken to be the time of the adoption of the amendments to the constitution: that at this time, and not before, it may be said with propriety, as well as justice, they were adopted and received into the family of the constitution, and became, as it were, members or constituent parts thereof; that the general election in October eighteen hundred and thirty-eight, being the time when the people by their vote approved of the amendments, may very properly be regarded as the time when they, by their vote then given, *agreed* merely that the amendments should be received into, and *adopted* as constituent parts of the constitution on the first day of January 1839. That the agreement to adopt may very well be distinguished from the act of adoption; and consequently they may, and in some instances must, be considered as taking place at different times. And thus it appears, as it is contended, that by taking the first day of January, eighteen hundred and thirty-nine, as *the time of the adoption of the amendments* to the constitution, this phrase is not only rendered uniform in its meaning, and made to designate and refer to the same point of time throughout the amendments, as often as it is used, but the whole becomes thereby consistent and harmonious in all its parts; and at the same time perfectly rational, and certainly more just in its operation.

This course of reasoning is plausible, and not without much force; but still, when we come to look throughout the amendments, and discover that the convention seemingly, when they intended to make the first day of January 1839 the time at which any thing therein provided for should take place, or be looked to as the point of time in order to ascertain the then existing state of that which was intended to be provided for, have designated or mentioned it in express terms. As, for instance, in the sixth section of the schedule, they have said: "The commissions of the judges of the Supreme Court, who may be in office on the first day of January next, (1839,) shall expire in the following manner," &c. But seeing the convention, in the section immediately following, while still

[The Commonwealth ex relatione v. Collins.]

engaged in making further provision on the same subject, with a like view, that is, for continuing the judicial tenures created under the authority of the constitution of 1790, have changed entirely their manner of expression, for the purpose of designating the particular point of time to which they intended to refer in order to describe the commissions of the judges that were therein intended to be provided for, so as to prevent their being driven at once from their offices, without allowing them some little time, at least, to prepare for meeting the event, is powerful, if not conclusive evidence to show that they intended, by the change in the seventh section, in substituting the expression " at the adoption of the amendments to the constitution," for that of " on the first day of January next," to make the time different for the classification of the judges mentioned in the latter section, from that .mentioned in the former.   It seems impossible, even by force of the most lively imagination, to come to the conclusion that the convention could have intended to refer to the same point of time, by using these two different modes of expression.   If it plainly appeared that they were used elsewhere, in the amendments, as synonymous, it might furnish some ground for believing that they were possibly intended to be used as meaning the same thing in this instance also, but there is not the slightest indication of the kind to be met with.   It is utterly impossible, then, that the convention could have intended to refer to the first day of January 1839, by using each of these two modes of expression, as they have done, in the sixth and seventh sections of the schedule, without supposing that they intended to create doubt and confusion, which cannot be imputed to them.   Neither can it be supposed or believed that a body, so conversant with the English language and its synonymes, could have used the two expressions, believing that they would be taken and understood to mean each the first day of January then next following, (1839.)

But it has been said that the course of reasoning adopted, and the observations made by Chief Justice Marshall, in Owings *v.* Speed, 5 *Wheat.* 420, have a bearing upon this case, and go to show that the commission of the defendant is still in force, and that he is entitled to hold the office of president judge under it.   I am compelled, however, if it be so, to say that I am unable to discover it.   So far, however, as it is possible to apply what is there said, to the case before us, it appears to have a directly opposite tendency; and goes to prove that the *time of the adoption* of the constitution of the United States, *was anterior* to the *time of its coming into effect.* The chief justice pronounces the ratification of it by nine states, that is, their agreement to accept of it, the *adoption* of it by them; which was in 1788, though it did not, as he shows, take effect, or come into operation until the first Wednesday of March 1789.   So far, therefore, as this has any bearing on the present case, it is to corroborate and strengthen what has been contended for on behalf of the commonwealth: that the vote of the majority of the electors,

in relation to the amendments, who voted on that question at the general election on the 9th of October 1838, being in favour of the amendments to the constitution, was an *adoption* of them; and, therefore, that day ought to be regarded as the time of their adoption, though they were not, according to the provision contained in the second section of the schedule, to take effect till the first day of January 1839. Chief Justice Marshall also shows that though the constitution of the United States was an entire new instrument, so that when it came into full operation it superseded every thing of the kind that existed previously, yet certain things were done under the direction of the convention that framed it, before it came into effect, as preparatory to its coming into operation on the first Wednesday of March 1789. For instance, the old congress, under the authority thus given, fixed the day on which the electors of President and Vice President should be appointed, and again the day on which these electors should meet in their respective states, and vote for President and Vice President; all which was done under the authority of a schedule, as it might be called, which accompanied the constitution and its ratification by the states, before the first Wednesday of March 1789, when, as it was held in that case, was the time at which it first came into operation. So that the doctrine of Owings *v.* Speed would seem to sanction the principle, and especially in case of amendments to a constitution already in operation, that some parts thereof, according to their special import, might come into operation before the time fixed for their taking effect generally. It has also been claimed for the defendant that the constitution of 1790 still remains in full force, and never ceased for a moment to operate, so far as it has not been altered or set aside by the amendments. This position is certainly true; but it is difficult to perceive how the defendant can derive any aid from it, because the judicial tenure prescribed by the constitution of 1790, under which he received his commission, is changed, and therefore annulled, as may be seen, in the most explicit terms, by the amendments. The amendment relating to the appointment and tenure of judges is in these words: " The judges of the supreme court, of the several courts of common pleas, and of such other courts of record as are or shall be established by law, shall be nominated by the governor, and *by and with the consent of the senate* appointed and commissioned by him. The judges of the supreme court shall hold their offices for the *term of fifteen years,* if they shall so long behave themselves well. The president judges of the several courts of common pleas, and of such other courts of record as are or shall be established by law, and all other judges required to be learned in the law, shall hold their offices for *the term of ten years,* if they shall so long behave themselves well." Thus altering, as we see, the constitution of 1790, which authorised the *governor alone* to appoint and commission the judges of all those courts; and which also declared expressly

[The Commonwealth ex relatione v. Collins.]

that they should hold their offices *during good behaviour.* According to the second article of the schedule, this alteration took effect and came into operation on the first day of January 1839. This section declares that " the alterations and amendments in the said constitution shall take effect from the first day of January 1839;" and would certainly have annulled the commissions and tenures of all the judges then within the state, as has been shown before, had it not been for the subsequent provisions contained in the sixth and seventh sections of the schedule, which have been recited above. It seems impossible to escape from this conclusion, unless it can be shown that the amendments, without these two last mentioned sections of the schedule, would not have affected at all the right of the judges in commission on the first day of January 1839, under the constitution of 1790, to hold their offices during good behaviour, but that they would have continued to hold their offices in the same manner as if the amendments had not been adopted. If this could be shown, then, if the defendant be not embraced within the seventh section of the schedule, he would be entitled to hold his office, which he claims, not merely for the term of ten years from the date of his commission, but forever, if he behaved himself well. Such construction, however, were it to be given, would strike every one with amazement, because it would not only be most palpably repugnant to the plain letter and meaning of the amendments, but also directly contrary to the whole scope and tenor of them.

Under this view, we have come to the conclusion that the convention, in using the expression—" at the adoption of the amendments to the constitution," could not have intended to refer to a later point of time than the day when the result of the vote of the electors thereon was to be ascertained and made known by the speaker of the senate, from the official returns thereof. And it may be that an earlier point of time was intended; but according to our construction of the amendments, as regards the main question before us, it is not material whether an earlier day was intended or not. The speaker of the senate, on the eleventh day of December, eighteen hundred and thirty-eight, under the authority conferred on him for that purpose, publicly declared that the amendments had been approved by a majority of the electors at the preceding general election, who had voted thereon. Then, after they had thus been adopted and so declared, and before the first day of January, eighteen hundred and thirty-nine, when they were to take effect, the defendant, on the twenty-seventh day of December, eighteen hundred and thirty-eight, was commissioned president judge of the second judicial district, during good behaviour, by the governor under the authority of the constitution of 1790. This' authority of the governor, however, as also the right to hold the office under the commission so granted, ceased on the first day of January, eighteen hundred and thirty-nine, by operation of the amendments, which took effect on that day, unless extended be-

yond that time by the seventh section of the schedule recited above. But upon a fair construction of this section, it would seem difficult, if not almost impossible, to bring the commission of the defendant within its provisions. It is clear that it refers only to commissions which were in force " at the adoption of the amendments to the constitution," and was not intended to embrace any others. Why it was so limited in its provisions, can not, perhaps, be very satisfactorily explained, from any thing that appears on the face of the amendments themselves; nor is it requisite that any good reason should appear or be given for it, as long as it has become part of the constitution by the will of the people. The caption of the seventh section doubtless included, as has been said, all the president judges of the several judicial districts, and associate law judges of the first judicial district, within the state. And if there had been no reference, in the subsequent clauses of the section, to the time at which it was designed they should be classed, and for this purpose designated, it would have been natural and perfectly fair to have brought, in aid of giving a proper construction to it, the second section of the schedule, which declares that the amendments shall take effect on the first day of January 1839, for the purpose of designating the time intended for distributing the judges, mentioned in the seventh section, into their proper classes. In this way the present commission of the defendant could have been included, and its force extended to a period of ten years from its date. But the subsequent clauses of the seventh section, which embrace and class all the judges mentioned in the caption of the section, fix the time expressly at which they shall be classed, and make it the *time of the adoption of the amendments* to the constitution, by declaring that the commissions of one half of those who shall have held their offices ten years or more *at the adoption* of the amendments to the constitution, shall expire on the twenty-seventh day of February, eighteen hundred and thirty-nine; that the commissions of the other half of those who shall have held their offices ten years or more *at the adoption* of the amendments to the constitution, shall expire on the twenty-seventh day of February, eighteen hundred and forty-two; the first half to embrace those whose commissions shall bear the oldest date. That the commissions of all the *remaining* judges, that is, the rest of all those who were first mentioned, without doubt, in the beginning of the section, who shall *not have* held *their* offices for ten years *at the adoption* of the amendments to the constitution; thus not only meaning, but declaring plainly by necessary implication, that the commissions of all those who shall *not have* held *their* offices, that is, who shall have held them for less than ten years *at the adoption* of the amendments to the constitution, shall expire on the twenty-seventh day of February next after the end of ten years from the date of *their* commissions. But how can it, with propriety, be made to include those who did not hold their offices *at the adoption* of the amend-

ments, but commenced holding them subsequently thereto? It would seem not to be susceptible of any other construction, without doing violence to what appears to be its true grammatical construction, as well as that which arises from its context. The only judges mentioned in this section are those of whom it can now be predicated that they either had or had not then held *their* offices ten years, that is, at the time of the adoption of the amendments. But such predicate naturally, at least, if not necessarily implies that the judges who are its subject should then be in being and holding their offices as such. It is not pretended that Judge Collins, under his last commission, the only one that is claimed to be in force, can come within either class of the first division; and it is equally clear that he can not be brought within the second: because a president judge, to come within the latter, as well as the former, must, in order to meet the plain, unambiguous terms of the section, *have had* his commission and held his office under it at the time of, if not before, the adoption of the amendments. Then, in order to show and illustrate the meaning of the convention in the last clause of the section, embracing "the commissions of all the remaining judges, who *shall not have held* their offices for ten years at the adoption of the amendments to the constitution," which form the third class, and the only one that the defendant can possibly claim to be included in, let us suppose that a president judge were to say, "I *had not* held *my* office ten years at the adoption of the amendments," would not all who heard him naturally and necessarily infer, and correctly, too, from his own form of speech, that he held *his* office at the time of the adoption, but the ten years had not then expired? But if the fact were so, that he did not hold it then, but obtained it *after* the adoption, would he not be taken to have spoken untruly? And if, upon being called on afterwards to explain why he said so, he were to attempt to vindicate the truth of his assertion, by alleging, that as he did not hold the office at all then, but came into it under a commission granted to him subsequently, and therefore what he said was literally true, would it not be considered a mere subterfuge? These are questions which seem to admit of no other than affirmative answers. Then for any one to assert now, that Judge Collins *had not held his* office under his second commission ten years, at the adoption of the amendments, would be asserting plainly, by implication, that he then held his office under it, but had not held it so long as ten years; this, however, would surely be incorrect, as he did not, then, hold the office at all under it, it being granted to him subsequently. The words in the last clause of the seventh section of the schedule, being "*who shall not have held their offices* for ten years at the adoption of the amendments," seem to indicate so clearly the intention of the convention to provide only for those who should be in office at that time, without having held their offices for ten years, that it seems almost impossible even to imagine that they would have used such

[The Commonwealth ex relatione v. Collins.]

form of speech, unless such was their intention.   Then, if it were the intention of the convention, as it seems to have been, that no appointment of a president judge of any of the courts of common pleas, made by the governor between the adoption of the amendments to the constitution and the first day of January 1839, should endure longer than to this latter day, it is nothing but right, in a legal point of view, that he who has been so appointed should then give up the office, so that it may be filled again, either by himself or another nominated by the governor, and by and with the consent of the senate appointed and commissioned by the governor for that purpose.

. Believing this to have been the meaning and intention of the convention, as collected from a fair interpretation of the language and terms in which the amendments are drawn up, we consider ourselves bound to carry the amendments into effect according to such intention, let the result of their operation be what it may, whether for the better or the worse, as forming part of the constitution, and paramount law of the state.   My own prejudice, however, is certainly not in their favour.   I have no hesitation in pronouncing them the product of a delusion, that has been the ruin of nations in times past, quite as wise, intelligent and virtuous, at one period of their existence, as we have any right to claim to be.   But as long as it belongs to every succeeding generation or nation, always, to think itself more enlightened and more wise, and therefore more capable of governing itself than any that has gone before it, in such manner as most effectually to promote and secure individual as well as national happiness, by leaving or placing every one in the full enjoyment and exercise of all his national rights, without imposing any restriction upon them whatever, it is not to be wondered at that we should, under the influence of a most inflated and vain confidence in our own superior wisdom and discretion, disregard the warnings which might be derived from the experience and sad fate of those who, from the same kind of illusory confidence in their superiority, lost every thing, and became, as it were, entirely extinct among the nations of the earth; and blindly and most heedlessly run on, in precisely the same fatal course that led to their degradation and ruin.   It would seem as if the empty pride and incorrigible vanity of our nature was, without fail, either sooner or later, to consign us to some such unhappy destiny as ever ought to be deprecated.

. Seeing, then, the commission under which Judge Collins claims to hold the office of president judge of the second judicial district, was granted subsequently to the adoption of the amendments, and consequently, as has been shown, was not embraced, nor its force extended by the seventh section of the schedule, nor by any other part of the amendments, it became null, void, and of no effect whatever, on the 1st day of January eighteen hundred and thirty-nine. Judgment of ouster must, therefore, be rendered against him.

[The Commonwealth ex relatione v. Collins.]

It is considered by the court here, that the said Oristus Collins, Esq., do not, in any manner, intermeddle or concern himself in and about the holding of or exercising the said office of president judge of the said second judicial district within this commonwealth, composed of the county of Lancaster, in the said information specified, in virtue of the supposed commission by him mentioned in his plea in bar aforesaid; but that the said Oristus Collins, Esq., be absolutely forejudged and excluded from holding or exercising the same office, and that the said commonwealth recover costs taxed, &c.

Huston, J., dissenting.—The writ states "that, by the amended constitution of this state, which was agreed to in the convention on the 22d of February 1838, and *adopted, ratified, and confirmed* by the citizens of this commonwealth on the 9th day of October 1838, and the fact of its being so adopted, duly declared and proclaimed on the 11th of December 1838, it is provided by the second section of the fifth article as follows, viz: The judges of the supreme court, of the several courts of common pleas, and of such other courts of record as are or shall be established by law, shall be nominated by the governor, and, by and with the consent of the senate, appointed and commissioned by him. The judges of the supreme court shall hold their offices fifteen years, if so long they shall behave themselves well. The president judges of the courts of common pleas and of such other courts of record as are or shall be established by law, and all other judges required to be learned in the law, shall hold their offices for the term of ten years, if they so long behave themselves well. That in the seventh section of the schedule of said constitution it is provided as follows: The commissions of the presidents of the several judicial districts and of the associate law judges of the first judicial district, shall expire as follows: The commissions of one-half of those who shall have held their offices ten years or more at the adoption of the amendments to the constitution, shall expire on the 27th of February 1839, and the other half of those who shall have held their offices ten years at the adoption of the amendments to the constitution, shall expire on the 27th of February 1842; the first half to embrace those whose commissions shall bear the oldest date. The commissions of all the remaining judges who shall not have held their offices for ten years at the adoption of the amendments to the constitution, shall expire on the 27th of February next after the end of ten years from the date of their commissions." It then proceeds to state that at the adoption of the amendments to the constitution, to wit: on the 9th of October 1838, O. Collins held the office of president judge of the second judicial district of Pennsylvania, by virtue of a commission bearing date the 8th of August 1836, by virtue of a commission of that date, and continued to hold said commission and office up to the 26th of December 1838. That on the said 26th of December last past the

VIII.—2 E

[The Commonweath ex relatione v. Collins.]

said O. Collins resigned the said commission of president judge of said district; and, on the 27th day of December, the day following the date of said resignation, was again commissioned to the same office he had before held, by Joseph Ritner, Esq., then being governor of the said commonwealth of Pennsylvania, under and by virtue of the fifth section of the schedule to the amended constitution. That notwithstanding the resignation of the commission held by the said Oristus Collins at the adoption of the amendments to the said constitution as above mentioned, and the foregoing provisions of the said amended constitution, and the second section of the schedule of said amended constitution, which is in the words following, to wit: "The alterations and amendments in the said constitution shall take effect from the 1st day of January 1839." The said Oristus Collins continues to hold and exercise the office of president judge of the second judicial district of Pennsylvania, without warrant or lawful authority for so doing, "wherefore the attorney-general, &c.

· The respondent states that, on the 27th day of December 1838, the governor issued to him a commission, &c.; that the office of president judge was at that time vacant, &c.; and a protestation that the vote on the 9th of October 1838 was on the expediency of adopting the amended constitution on the 1st of January 1839, &c. To this there was a demurrer and joinder.

The decision of this case was argued on the meaning of the words adopt or adoption in the constitution and schedule, and the time when the amended constitution became the law of this state, and the construction of the seventh section of the schedule annexed to the amendments.

It may be proper to notice the different forms of expression used by the legislature in the several acts of assembly relating to this subject.

On the 14th of April 1835, an act of assembly was passed submitting it to the people to vote at the election in October then next, on the expediency of calling a convention.

On the 19th of January 1836, an act was passed providing for the election of members of the convention.

In the sixth section we find the words, "and when the amendments shall have been agreed on by the convention."

In the eighth section, for the purpose of ascertaining the sense of the citizens "on the expediency of adopting the amendments so agreed upon by the convention," an election was to be held, &c.

Sections nine and ten direct the mode of conducting the election, of making the returns, and counting the votes, and certifying the result by a certificate to be filed in the office of the secretary of the commonwealth, and another delivered to the governor, whose duty it shall be to declare by proclamation whether the said amendments have been or have not been adopted by the freemen of the commonwealth.

[The Commonwealth ex relatione v. Collins.]

On the 22d of February 1838 the labor of the convention closed, and the amended constitution was signed and published according to law, and on the 9th of October 1838, the people confirmed it by a majority of votes.

On the 11th of December 1838, the votes were counted, and a certificate of the speaker of the senate, stating the number of votes for the amendments and against the amendments, and on this being transmitted to the governor, he on the same day issued a proclamation, stating the number of votes for and against the amendments, having a majority for said amendments, and therefore he declared, in pursuance of the act of assembly, that the said amendments have been adopted by the freemen of this commonwealth—*and that they are to go into operation and be in force in the manner and at the time set forth and named in the said amendments and schedule thereto annexed.* So far we have the language of the acts of assembly—agreed, approved, expediency of adopting, and the proclamation in the words of the act of assembly, that the amendments had been adopted, and to go into operation, &c.

In the constitution itself we find in the article 1, sect. 9, "The senators who may be elected at the first general election, after the *adoption* of the amendments to the constitution, shall be divided into three classes. The seats of the senators of the first class shall be vacated at the expiration of the first year; of the second class, at the expiration of the second year; of the third class, at the expiration of the third year; so that thereafter one-third of the whole number of senators may be chosen every year. The senators elected before the amendments to the constitution shall be adopted, shall hold their offices during the time for which they shall respectively have been elected."

As "each house shall judge of the qualifications of its members," it does not seem proper that we should say any thing on this section, but it is certain that the senate have not considered this clause to apply to the members elected last October.

In article 6, sect. 10, we find as follows: "Any person who shall, after the adoption of the amendments proposed by this convention to the constitution, fight a duel or send a challenge for that purpose, or be aider or abettor in fighting a duel, shall be deprived of the right of holding any office of honour or profit in this state, and shall be punished otherwise, as is or may be provided by law; but the executive may remit the said offence and all its disqualifications." Now, when we see that the second section of the schedule says, "The alterations and amendments in the said constitution shall take effect from the first day of January 1839, and that the duelling cause is one of these alterations, we can have no doubt of the meaning of the word *adoption*, as used in it. No court, nor lawyer, nor intelligent layman will say a man is to be deprived of any right, or subjected to any punishment by any law, before that law takes

[The Commonwealth ex relatione v. Collins.]

effect. The time designated in the above section by the word *adoption* of the amendments, means, and must mean, the 1st of January 1839, when these amendments were to take effect.

The constitution derives its force and effect immediately from the people. They, and they only, can agree to it, approve it, adopt it, or in the words used in the constitution of the United States, ordain and establish it, as in the first clause, or as in the last clause of that instrument. " The ratification of the conventions of nine states shall be sufficient for the establishment of this constitution between the states so ratifying the same." Neither the legislature nor any branch of it, were required to do any act except count the votes and certify the result; and the governor had no duty nor power except to proclaim that result. The sanction of neither legislature nor governor was required, and whether they approved or disapproved of it, did not affect its validity. The people by their votes approved, or adopted, or ratified, or established it, and they acted on 9th of October 1838. In a popular sense they then adopted it; but they adopted it as it was written, and no otherwise. A schedule was subjoined to it, and forms part of it; most of its provisions are temporary, and when once acted on, become useless; but they have the same force and obligation as the other parts of the instrument, and are derived from the same source viz., the people. That schedule was prepared that no inconvenience arise in the transition of the government from the old to the new constitution, and it ordained that—

§ 1. "All laws of this commonwealth in force at the time when the said alterations *and amendments shall take effect,* and not inconsistent therewith, and all *rights,* prosecutions, claims and contracts, as well of individuals as of bodies corporate, shall continue as if the said alterations and amendments had not been made."

§ 2. " The *alterations* and *amendments* in the said *constitution shall take effect* from the first day of January 1839." The words, unless otherwise provided in this schedule, must be understood here. This will be more apparent on viewing the other sections which follow: for on most, if not all the offices, it did not take effect on the first of January 1839; and on some of them not for more than ten years after that time.

The third section does not seem material in this case.

So of the fourth section.

§ 5. " The governor who shall be elected in October 1838, shall be inaugurated on the *third Tuesday in January* 1839, *to which time the present executive term is hereby extended.*"

This alteration was eminently necessary, that no inconvenience might arise from the change from under the old to the new constitution; and whatever may be said of the precision of the language of this instrument, there has been and can be no serious difficulty as to this. " The executive term is extended," can have but one meaning; it includes the duties, and the powers, and the emolu-

ments of the whole executive department, and carries it on to the period designated, neither increased nor diminished; it remains as it was under the old constitution, at least until 1st January 1839, and as it is under the new one from that time until it expired by its limitation.

Let us not mistake either things or words. A constitution is but a law; it emanates from the people, the depositary, and the only one, of all political power; it is, therefore, the supreme law. It organizes and defines the different parts of the government, confers on each department the powers and duties allotted to each, and limits the powers of every department. It has this further quality: having distributed the different powers to the different departments, it leaves those powers to be erected by those departments, and leaves to the sovereign people themselves no other power than that of choosing their own officers or representatives. The people can do no act, except make a new constitution or make a revolution.

Still a constitution is but a law, though it is the supreme law: and it is to be construed as every other law, though it is sometimes the law by which acts of the legislature, and which are generally termed laws, are to be tested. It is common, and our books are full of them, to enact laws to take effect from the time when signed by the speakers of both houses and the governor; but it is also common to enact laws which are not to go into operation for a specified time; and though, in each case, we find " be it enacted and it is hereby enacted," it is no law until the specified time arrives. I have before me an act passed 24th of February 1834; the last section is—this act shall take effect from and after the first day of October next; and all such acts of assembly as are hereby altered or supplied, shall be and are hereby repealed, except so far as may be necessary to finish proceedings commenced, &c.   Now this act of assembly, though it had gone through all the forms, and received all the sanctions requisite to give it validity and make it binding, was no law until the first of October, eight months after it passed. Until that day, the existing laws which it repealed, when it took effect, continued in full force.

This is more clearly and distinctly the case with a constitution, which being the supreme law, there can not be two supreme laws at the same time, requiring different duties and conferring different powers. Let us not mistake a constitution, which confers powers and requires duties, and permits one thing and forbids another— let us not mistake it for the printed or written paper on which we find it. It is the great rule of action, having the highest sanction— it consists of the principles and regulations established by it—it is more than the paper and ink—when, in the sense contended for and in a sense which at first seems to meet popular opinion, it is said to have been adopted. It, as a constitution—as a rule of action—as the supreme law of the land, had no existence, it was a dead letter—it was powerless—it was nothing but the expression

of an intention—a declaration of what would be hereafter, until long after the 9th of October 1838. The old constitution continued in force—it was the governing rule of action, as well of individuals as of officers and departments—it was the supreme law until it expired on the first of January 1839. Words must have meaning, especially in important matters; when a constitution is adopted, it must be adopted as the supreme law of the land. If this is not the case, in what situation were the good people of the state from the 9th of October until the 11th of December? The majority was small—it was doubted on which side it was; no functionary of the government knew what would be the result, and none would have dared to act, had it not been that, by the very instrument itself, it was provided that the old constitution should continue in force until the first of January 1839.

The eighth section of the act of the 29th of March 1836, expressed the true meaning, and the only rational one, " for the purpose of ascertaining the sense of the people, *on the expediency of adopting* the amendments agreed upon by the convention;" the election was to be held, and the tenth section, which directs that proclamation should be made whether the amendments have been or have not been adopted, is inaccurate. The proclamation of the governor, that the amendments have been adopted, and that they are to go into operation and be in force in the manner and at the time set forth and named in said amendment and schedule thereto annexed, is nearer the truth. The amendments, properly considered, as what they are, the supreme law of the land, could not be adopted in that sense, and were not intended to be adopted in that sense until the 1st of January, 1839, it then became the supreme law of the state. Let us advert more particularly to the constitution of the United States, and its history. It begins: " We, the people of the United States, in order to form a more perfect union, establish justice, &c. &c., do ordain and establish this constitution for the United States of America." And it ends: " The ratification of the conventions of nine states shall be sufficient for the establishment of this constitution between the states so ratifying the same." Now these words are stronger than the word adopt; and the expressions are as positive as the governor's proclamation. It was ratified, or agreed to, or adopted, by eleven states in succession between May and the 17th of September 1788. On the 28th of September 1788, congress, sitting under the old confederation, notified the governors of this fact. I have not their letter, but Marshal, C. J , 5 *Wheaton* 420, says congress notified the states that *it was adopted.* And the expression that it was adopted at particular times by the states in succession, is used by him in his life of Washington, and by other writers; but when the time of its adoption is thus spoken of, it is figurative. The adoption or ratification of eight states left it an able paper, but not a constitution; it did not become one until the ninth state ratified or adopted it. Nay, it was no constitution;

[The Commonwealth ex relatione v. Collins.]

it was not the supreme law of the land before the 5th of March 1789, and so decided by the Supreme Court of the United States in the case last cited. The legislature of Virginia, in October 1788, passed a law which, after the adoption of the federal constitution, would have been void; but this constitution ordained, established, ratified and adopted by more than nine states, was held to be not yet in existence; it was not the law of the land; it had no force or effect till the government was organized under it. This statement proves, as far as the highest authority can prove, that it may be said a constitution is adopted, and yet when figurative language is laid aside, and judicial decision is required, it is found that the constitution, so far from being adopted as the organization of the government and supreme law, was still a dead letter, affecting nobody and restraining nobody.

The words adopted, or adoption, are vague and indefinite, and we must gather the precise meaning from the context, and the whole instrument. Now, in the two clauses in the body of the constitution, they must mean the time when the constitution became the law of the land, or the sentences in which they are used are absurd.

If we look to the remaining sections of this schedule, which extend to twelve, we shall find every one of them predicated on the idea that the old constitution continued until the 1st of January 1839; and though this is not said so in express words, yet it is so by necessary implication, which is as strong in law and in reason as direct assertion; and provision is made for the appointment of every officer from the highest to the lowest, of those heretofore appointed by the governor. It is assumed throughout, that though the tenure of office and mode of appointment is changed, the office and the officer are continued until the times prescribed.

The sixth section relates to the commissions of the judges of the supreme court, who shall be in office on the first of January 1839, and directs when their commissions shall expire at each consecutive period of three years.

I think it will appear that all the remaining sections refer to and speak as of this 1st of January 1839.

The seventh section is most material. It is: " The commissions of the president judges of the several judicial districts, and of the associate law judges of the first judicial district, shall expire as follows: The commissions of one-half of those who shall have held their offices ten years or more, at the adoption of the amendments to the constitution, shall expire on the 27th day of February 1839. The commissions of the other half of those who shall have held their offices ten years or more at the adoption of the amendments to the constitution, shall expire on the 27th day of February 1842. The first half to embrace those whose commissions shall bear the oldest date. The commissions *of all the remaining judges who shall not* have held their commissions ten years at the adoption of

the amendments to the constitution, shall expire on the 27th of February next after the end of ten years from the date of their commissions.''

§ 8. The recorders of the several mayors' courts, and other criminal courts of this commonwealth, shall be appointed for the same time and in the same manner as the president judges of the several judicial districts *of those now in office.* The commissions oldest in date shall expire on the 27th of February 1842, and the others every two years thereafter, according to their respective dates, the oldest expiring first.

§ 9. The legislature at the first session under the amended constitution, shall divide the other associate judges of the state into four classes. The commissions of those of the first class shall expire on the 27th of February 1840, &c., &c., till 1843, according *to* the dates of their commissions.

§ 10. The prothonotaries, clerks of the several courts, (except of the supreme court,) recorders of deeds, and registers of wills, shall be first elected, under the amended constitution, at the election of representatives in the year 1839, in such manner as may be prescribed by law.

§ 12. The first election for aldermen and justices of the peace shall be held in the year 1840, at the time fixed for the election of constables, &c.

I think it is apparent all these sections refer to the 1st of January 1839, though not in words, yet in a manner not to be mistaken. All the officers without exception would continue in office until that time. There was no occasion to speak of, or provide for them before that time. To prevent the confusion which would have ensued from every office expiring on that day, the several offices are to expire at different periods, and the time of each is by necessary implication extended to the time designated for the change. It is also obvious there was no intention that any one office should become vacant until the time therein mentioned. Even in the eighth section the words "now in office," must fairly be applied to mean by "now" the 1st of January 1839. There are but three or four recorders—if all had died or resigned, there would not on any other construction have been any provision for the others; at least none easily understood—but if "now" in that sentence means the 1st of January 1839, there can be no difficulty.

I go back to the seventh section. The commissions of the president judges. What president judges? Certainly of those who shall hold that office when the constitution affected them—of those who should be then in office. The *president judges of the several judicial districts,* includes all. It is equivalent to "the commissions of all the president judges of the state." No one can deny this branch of the sentence includes every one, and plainly manifests an intention to provide for every one—for every one whose tenure of office would be affected by the new form of government.

The sentence then is explicit as if it had been written, " the commissions of all the president judges of this state shall expire as follows: Of the judges who shall have held office ten years or more at the adoption of the amendments, one-half shall expire on the 27th of February 1839, and the other half on the 27th of February 1842.    The first half to embrace those whose commissions bear the oldest date."    Let it be observed the commissions are to expire in order—not of the length of time the officer has been in office, but according to the dates of the commissions.    This is not accidental, it occurs before.    The time when the offices of the judges of the supreme court expire depends on the date of the commission. This branch of the sentence is also affirmative and includes those who shall have held their offices ten years or more—it is also exclusive, it has no relation to, nor effect upon those who had not held office ten years—let us attend to the remaining part of the section. " The commissioners of *all the remaining judges who shall not have held their office ten years* at the adoption of the amendments to the constitution, shall expire on the 27th of February next after ten years from the date of their respective commissions."    The prosecution would read this thus: The commissions of the remaining judges who shall have held their offices less than ten years at the adoption of the amendments—and thus excludes those who did not hold their office at the adoption—but no man can gravely say this does not change the meaning, and I know of no authority to leave out the word " not" and insert " less than," most clearly the word "all" in the beginning of the sentence is material, and can only be rejected by those who insist for a particular construction.    The presidents of the several judicial districts includes all in the state.    Those who have held commissions ten years and all the remaining judges who have not held commissions ten years, also include all the judges in the state; and Judge Collins did not hold his office ten years, and is embraced by the last clause.    When the mode of expression is changed, and the first clause is inclusive of only a part, and the last is negative of those mentioned in the first clause, I know of no authority for changing it for other words conveying a different meaning; at least no authority when the words do convey a different meaning; besides the construction contended for makes the whole section inconsistent, for the first part clearly indicates an intention to provide for the case of every judge in the state.    My construction of the last clause does so; all who held office a certain length of time, and those who had not held office for that length of time, include all the judges in the state.    If I am right as to the time of *adopting* the amended constitution, there can be do dispute as to my conclusion.    But if the amendments were, and if the meaning of the sentence compels us to say they were, adopted on the 9th of October, I still say the seventh section includes those who were not, as well as those who were, judges on that day.

[The Commonwealth ex relatione v. Collins.]

It would be easy to quote authority of the highest courts and best writers as to the construction of words and sentences, and especially of them as used in a constitution. Men of critical and philological acuteness have been able, and will always be able to raise plausible disputes as to the meaning of instruments prepared with great care. Almost every important word is used sometimes in a plain and sometimes in a figurative sense; and words are·constantly acquiring a meaning different from what they once had, and are constantly used and understood in a manner not strictly accurate. I make a power of attorney, and near the close of it say—and I do hereby ratify and confirm whatever my said attorney may do, &c., &c.; now both words, ratify and confirm, in strictness only apply to what has been done, not what is to be done. The meaning is, I agree, that I will ratify and confirm; such form of expression is not uncommon. If we consider a constitution as what it really is—as a form of government, organizing the different departments of that government, changing the old and introducing new provisions—if we consider a constitution as the supreme law, and recollect that there can not be, at the same time, two different supreme laws, it seems clear it can only be adopted when it supersedes and displaces the old one, and becomes in reality the supreme and controlling law.

I disclaim all knowledge of express intention in the framers of this instrument, because there was much diversity of opinion and probably of intention; also, because I do not believe the very case occurred to the convention, or to even a large proportion of it.

It is not necessary to say that Mr Collins, on his resignation, was a private citizen, and could as legally and constitutionally be appointed a judge, as if he had never had a commission. This was not denied; nor was it seriously contended, nor, I think, can it be, that Governor Ritner could not constitutionally appoint any qualified man to any vacant office. The eleventh section is express: "The appointing power shall continue as heretofore."

I do not suppose it possible, in any case of a dispute on the construction of any instrument, to convince every person. I have considered this case much and carefully, and have come to the conclusion, as well from what I suppose to be the intent of the whole schedule as from the words. In the clause as to duelling, it is clear the word adoption relates to the first of January 1839. I think it clear, the intention was to provide for every officer, and the beginning of the section is express, that it was intended to provide for every president judge, and that the convention used words which will include every judge, and that judgment ought to be for the respondent.