1820.

Owings
v
Speed.

———————⊃※⊂———————

(Constitutional Law.)

## Owings v. Speed *et al.*

The present Constitution of the United States did not commence its operation until the first Wednesday in March, 1789, and the provision in the Constitution, that " no State shall make any law impairing the obligation of contracts," does not extend to a State law enacted before that day, and operating upon rights of property vested before that time.

The books of a corporation, established for public purposes, are evidence of its acts and proceedings.

*March* 13th.    THIS cause was argued by Mr. *B. Hardin,* for the defendants, no counsel appearing for the plaintiff.

*March* 16th.    Mr. Chief Justice MARSHALL delivered the opinion of the Court. This was an ejectment brought by the plaintiff in the Circuit Court of the United States, for the District of Kentucky, to recover a lot of ground lying in Bardstown.

*a Vide* APPENDIX, *Note* IV.

1820.

Owings
v.
Speed.

This town was laid off in 1780, on a tract of land consisting of 1000 acres, for which, in 1785, a patent was issued by the Commonwealth of Virginia to Bard and Owings. In 1788, the legislature of Virginia passed an act, vesting 100 acres, part of this tract, in trustees, to be laid off in lots, some of them to be given to settlers, and others to be sold for the benefit of the proprietors. The cause depends, mainly, on the validity of this act. It is contended to be a violation of that part of the Constitution of the United States, which forbids a State to pass any law impairing the obligation of contracts.

Much reason is furnished by the record for presuming the consent of the proprietors to this law; but the Circuit Court has decided the question independently of this consent, and that decision is now to be reviewed.

Before we determine on the construction of the Constitution in relation to a question of this description, it is necessary to inquire whether the provisions of that instrument apply to any acts of the State legislatures which were of the date with that which it is now proposed to consider.

This act was passed in the session of 1788. Did the Constitution of the United States then operate upon it?

In September, 1787, after completing the great work in which they had been engaged, the Convention resolved that the Constitution should be laid before the Congress of the United States, to be submitted by that body to Conventions of the several States, to be convened by their respective legislatures;

and expressed the opinion, that as soon as it should be ratified by the Conventions of nine States, Congress should fix a day on which electors should be appointed by the States, a day on which the electors should assemble to vote for President and Vice President, " and the time and place for commencing proceedings under this Constitution."

The Conventions of nine States having adopted the Constitution, Congress, in September or October, 1788, passed a resolution in conformity with the opinions expressed by the Convention, and appointed the first Wednesday in March of the ensuing year as the day, and the then seat of Congress as the place, " for commencing proceedings under the Constitution."

Both Governments could not be understood to exist at the same time. The new Government did not commence until the old Government expired. It is apparent that the Government did not commence on the Constitution being ratified by the ninth State ; for these ratifications were to be reported to Congress, whose continuing existence was recognised by the Convention, and who were requested to continue to exercise their powers for the purpose of bringing the new government into operation. In fact, Congress did continue to act as a government until it dissolved on the first of November, by the successive disappearance of its members. It existed potentially until the 2d of March, the day preceding that on which the members of the new Congress were directed to assemble.

The resolution of the Convention might originally

have suggested a doubt, whether the Government
could be in operation for every purpose before the
choice of a President; but this doubt has been long
solved, and were it otherwise, its discussion would
be useless, since it is apparent that its operation did
not commence before the first Wednesday in March,
1789, before which time Virginia had passed the act
which is alleged to violate the Constitution.

In the trial of the cause, the defendant produced
a witness to prove that the lot for which the suit was
instituted, was a part of the 100 acres vested in trus-
tees by the act of assembly. To this testimony the
plaintiff objected, because the witness stated, that he
had sold a lot in Bardstown, with warranty, and
was in possession of another. He added, that no
suit had been brought for the said lot, and that he
was not interested in this suit. The Court admitted
the witness, and to this opinion also a bill of excep-
tions was taken.

It is so apparent that the witness had no interest
in the suit in which he was examined, and it is so
well settled that only an interest in that suit could
affect his competency, as to make it unnecessary to
say more, than that the Court committed no error in
permitting his testimony to go to the jury.

There was also an exception taken to the opinion
of the Court in allowing the book of the board of
trustees, in which their proceedings were recorded,
and other records belonging to the corporation, to be
given in evidence.

The book was proved by the present clerk, who
also proved the handwriting of the first clerk, and of

1820.

Owings
v.
Speed.

the President, who were dead.   The Trustees were established by the legislature for public purposes. The books of such a body are the best evidence of their acts, and ought to be admitted whenever those acts are to be proved.   There was no error in the opinion admitting them.

There is the less necessity *in this case* for entering more fully into this question, because the record contains other evidence of the facts, which the testimony, to which exceptions were taken, was adduced to prove.

Judgment affirmed, with costs.