Mr. Chief Justice Shamcey
delivered the opinion of the court.
This action was instituted in the circuit court of Adams county, by the Natchez Steamboat Company, a body corporate, to recover of the plaintiff in error, as a stockholder, certain instalments, or calls ¡hado by the directors, for a portion of the amount subscribed. Three verdicts have been found against him, and on the third trial several bills of exception were taken, which embrace the ■matters assigned as error.
It is first assigned as error that the court admitted G. Tichenor, S. Duncan, and P. M. Lapice, as witnesses for the plaintiff. It is shown by the bill of exceptions that two of these individuals were stockholders in the company, and the objection was made on the ground of interest. The facts are more fully set forth in the second bill of exceptions, and as there presented, they will be noticed. The first matter of evidence was the subscription paper, which was properly admitted to go to the jury. 14 Johns. Rep. 238. Tichenor was then called, who stated that he was the treasurer of the company from its organisation, and was a stockholder, but had never been secretary. That the books had been *491 deposited with him after the death of the secretary, and had remained in his possession for some' time, and until they -were delivered to the plaintiff’s counsel. The books of a corporation are evidence as between the members. 1 Starkie’s Evidence, 298; 5 Wheaton, 420. But they were not admissible as evidence, until they were proved to be the books of the company. 10 Johns. Rep. 154. To prove this fact Tichenor was introduced, and the question arises' whether his interest as a stockholder, was such as to disqualify him. If this objection rested on the ground merely of his being a stockholder in the company, it would, under the circumstances of the case, present a question of some doubt, as to his competency. It appears from the testimony that a sum sufficient to cover the' costs had been deposited in bank for that purpose. Ploiv the money was raised, and whether Tichenor had contributed, and would be entitled to have his portion refunded, does not appear, his liability for costs would present the strongest objection to his competency, and though the presumption of bias might be removed by the deposit made for that purpose, as it was held to be in 2 Yeates’s Reports, 121, yet it does not appear but that a part of the fund deposited was his, and he would be entitled-to a return of it, in the event of success. -The money was deposited by the company, and such an inference was justifiable. In addition to this, the witness stated that- he was interested in the event of the suit, and that ■statement is not explained away. How he was interested does not appear, and we cannot, therefore, undertake to say that it was not such an interest as to render him incompetent. But the same objection does not reach the testimony of Lapice, and he proves the same thing that Tichenor was called to prove, to wit, that the books exhibited were the books of the company. Lapice was the secretary and of course the proper person to prove the books. The objection made to him was that he had not been regularly appointed.. Of that we cannot- judge. The books .are not before us, and we - cannot determine on the legality or regularity of their contents. It appears that he was not appointed until “ three or four years after the members of said corporation had ceased to meet at the times required by their fundamental *492 rules.” A failure to meet at the times required by the fundamental rules would not necessarily work a dissolution of the corporation, and if they were not dissolved it can be no objection to his appointment, that they did not meet regularly at the times required by the bye-laws. Even a failure .to elect officers at the stated times, does not dissolve a corporation, but the old officers are considered as holding, until new ones are appointed. 9 Johns. Rep. 147.
Another ground of objection to him was, that he had not had the custody of the books. It is laid down as a rule that documents which are to be used, should come from the proper place of deposit. If the secretary had been living, the books should have been in his custody; but after his death, any'member of the company might have had the rightful possession of the books, and such possession from the necessity of the case, would be sufficient to justify their introduction. It was not essentially necessary that all the entries should have been made by the secretary; but entries made by any person acting for him in his necessary absence would be good. And if the company had the power to appoint or authorise any one to act for the clerk, in his absence, or to act after the death of the secretary; they must also have possessed the power to place the books where they pleased. 1 Starkie on Evidence, 299, 300.
Documents of this description are not admissible without collateral evidence, and this collateral evidence is required to identify the document, and wheii so identified, it becomes evidence. Nothing else was necessary but to establish the identity of these books, to make them evidence. Lapice testified that they were the books of the company, and it was not necessary to enter into proof as to the correctness of the entries in the books, for to admit such a proposition would be to deny that the books were evidence.
In tire case of Owens v. Speed, 5 Wheaton, 420, the books of a corporation were proved by the clerk then living, and it was said they were the best evidence of their acts. An objection to corporation books arose in the case cited from 10 Johns. Rep. 154, and the court said the books were improperly admitted; but they were only proved by a witness who swore to the handwriting of an *493 individual, státed therein to be clerk, but he did not know it to be the book of the corporation. It was admitted, that the books of a corporation, were the best evidence of their proceedings, but that it should be made to appear'that they were the books of the corporation, kept as such by the proper officer, or some one autho-rised. As Lapice has sufficiently established the same fact, that Tichenor was called to prove, there can be no reason for rever-. sing the judgment on that ground. There is no tenable objection to the testimony of Doctor Duncan. If he had not made the release it might have been otherwise, inasmuch as he stated that he should have conceived himself interested but for the release; that, however, must be deemed entirely sufficient to remove the presumption of bias. His stating that he should feel himself bound to contribute, if the sura deposited should be found insufficient to pay the costs, presented only a remote and very improbable contingency, which was not sufficient to disqualify him. There is nothing, therefore, in the first cause assigned for error.
It is, secondly, assigned as. error, that the court admitted the testimony of R. J. Walker and T. T. McMurran. These witnesses were examined to prove what a deceased witness had sworn on a former trial, and their testimony was objected to, because they did not undertake to repeat the precise words used by the witness.
. By the English authorities, it would seem to be necessary to prove the language used by the witness in such a case. Phillips’s Evidence, 215; 4 Johns. Rep. 289-90. The King v. Joliffe. But . hr a recent case decided in Virginia, it was held to be sufficient to prove the substance of what was sworn to, on the former trial. Caton v. Lenox, 5 Randolph’s Reports, 31. There are strong reasons that might be urged in favor of both rules. The admissibility of such testimony, can only be justified by necessity; and if the substance of what the deceased witness swore to can be positively proved, it would seem to be sufficient to answer the purposes of justice.
To confine the rule to the precise words of the deceased witness, would in most, or in perhaps, all cases, destroy or defeat it, and considering it as a rule of necessity, it is, perhaps, safest to admit the substance of the testimony, as it is the substance which *494 fixes the fact, and leads to the conclusion. In this instance, however, I look upon the testimony of Kyle, the deceased witness, as deposed to by Walker and McMurran, as so wholly irrelevant to the merits of the case, that if it had been necessary to prove his words, it would not present a good reason for reversing the judgment. Kyle, it appears, only .spoke of the value of the stock, and the presence of the defendant, at one of the meetings of the company. Whether the stock was worth one cent in the dollar, or whether the defendant was present or not, as there is nothing to show that his presence was necessary, cannot have any thing to do with the issue, and it would be contrary to all rules to reverse a judgment for an immaterial error.
It is also assigned as error, that the court erred in the charge to the jury. The only charge put upon the record as having been given by the court, was that if the jury believed from the testimony that Calvin Smith was present at the meeting in April, 1826, or at any other time assented by words or acts to the payment of the requisition made, that he was legally liable. To this charge, there can be no objection. There is nothing in the record to show that his assent was necessary. The call or requisition may have been made by the directors, under the authority of the by-laws, and of these laws we can know nothing, as they have not been placed before us. If made under such authority by the 'directors, it was binding without his assent. 1 Caines’s Reports, 381.
The next error assigned is, that the court refused to grant a new trial. All the reasons assigned for a new trial that are at all important, are embraced in substance in the points already noticed, except the alleged surprise which was occasioned by the ruling out of a deposition, which, it is said, was used on a former trial. It is the business of a party who takes depositions to see that they are regularly taken, and if they were not, it cannot be a ground of surprise that they were ruled out. The deposition alluded to was ruled out, because there was no affidavit amongst the papers, and the affidavit of R. M. Gaines, Esq., does not state that there ever was such an affidavit made, but only that he was induced to believe there was, from the fact, that the deposition was used on a former trial. This is by no means sufficient to establish the fact, *495 that the deposition was regularly taken. It was the duty of the party to be prepared for trial, and that he was not, can only be attributed to his own laches, and surprise produced by the laches, of the party, is never a good cause for a new trial. Smith v. Morrison, 3 Marshall, 85.
But the deposition is not before'us, nor any fact testified to by the witness, and it may be, that it was wholly immaterial to the issue; and if so, it would not present good cause for a new trial, if the party was even surprised by the rejection of it. When application is made for a new trial, on the ground of newly discovered testimony, the party .must show what that testimony will be, so that the court may judge of its materiality, and if it be immaterial, the new trial will be refused. And so it should be, when testimony is ruled out. The appellate court can only judge of the merits of a motion on .this ground, by knowing what testimony the party had been deprived of.
It is further assigned as error, that the court received the corporation books as evidence. We have already decided that the books were sufficiently proved to justify the admission of them;, as the books are not before us, we cannot judge as to their admissibility, on the ground of matters contained in them. It is possible that if they were subject to inspection, objections might appear. In them, the by-laws and regulations of the company, are no doubt contained, and the liability of the defendant might possibly be varied, but as it is, we have to judge of that liability from the subscription paper. This paper contains a positive and express promise to pay a certain sum,. which is binding on the party, and in this particular, it differs from the cases cited from 6 Mass. Rep. 40, and 8 Mass. Rep. 136. In these cases it was only an agreement to take a certain number of shares in Turnpike companies, and there was a provision in the statute, that if the subscribers for stock failed to pay the assessments, their stock was to be sold. ' The remedy consisted in the power to sell in case of failure to pay, and the subscription papers did not contain express promises to pay, but only an engagement to take stock.
Hence it was held, that there was no other remedy, but by sale *496 of the stock. It was admitted that if there had heen an express agreement by the corporators to pay, that an action could be sustained on the agreement. Smith would come clearly within this rule, because he has made an express promise to pay a certain surn for a certain purpose, in such instalments as should bé required by the directors.
I see nothing in this case, that in my opinion will justify a reversal of .the verdict. It must be affirmed.