Hempiiill, C. J.
The principal question in this case and the duly one discussed is, as to the time when the right of Texas to collect import duties under the revenue laws of the republic ceased to exist. The importations by the defendants in error’were made on the 30th of January, 1846; and it is contended by the plaintiff in this court, that all goods introduced before the 16th of February, 1846, the day of the organization of the state government, were chargeable with duties, in accordance with the laws of the republic regulating duties on imports; and by the defendants in error, that these laws became null and inoperative on the 29th of December, 1845, on which day, by joint resolution of the congress of the United States, Texas was admitted as one of the states of the Union.
The judgment of the district court was founded on the opinion that Texas being admitted on the 29th December, 1845, and becoming on that day one of the states of the United States of North America *(384) was, of consequence, entitled to all tlie rights and privileges belonging to any member of the Union: and from that time was subject to the provisions of the constitution of the United and its laws in the collection of duties on imports; and that the merchandise upon which duties are claimed, having been imported from one of the states of the Union, subsequent to the admission of Texas, was not liable to those charges, and that the collection of the same would be in direct conflict with the constitution of the United States.
The executive of the Union was, by joint resolution, approved March 1, 1845, authorized to submit one of two alternative propositions, to the republic of Texas as an overture on the part of that government for her admission as a state of the Confederacy. One of these contemplated the completion of this great measure, and the adjustment of its terms by legislation. And the other by negotiations of the parties to the compact. The president in his discretion selected and presented for consideration and acceptance by this repnblie, the proposals contained in the first and second sections of the said resolution, by which (among other matters not pertinent to the present question) it was declared that congress assented to the erection of the republic of Texas into a new state, with a republican form of government, to be adopted by the people of the said republic by deputies in convention assembled, with the consent of the existing government of the said republic.
This consent on the part of the United States was given upon several conditions, one of which required the constitution which was to be framed by the convention, to be transmitted with the proper evidence of its adoption by the people of the said republic of Texas, to the president of the United States, to be laid before the congress of the Union for its final action, on or before the first day of January, one thousand eight hundred and forty-six.
The existing government of Texas and the convention assented to this overture, with its conditions and guaranties, and this consent on the part of the convention was attached to and incorporated with the constitution.
By the first section of the 12th article of the said constitution, it was declared that “all process which shall be issued in the name of the republic of Texas, prior to the organization of the state government xmder this constitution, shall be’as valid as if issued in the name of the state of Texas.” In the second section of the same article, it was provided that “all criminal prosecutions or penal actions, which shall have arisen prior to the organization of the state government under this constitution, in any of the courts of the republic of *(385) Texas, shall be proseen ted to judgment and execution in the name of the state, etc. The sixth section contained a provision, that if it should appear on the second Monday of November, 1842, from the returns that a majority of the votes of the people of Texas were given for the adoption of the constitution, the president should mate proclamation of that fact, and thenceforth the constitution was ordained and established as the constitution of the state, to go into operation and l)e of force and effect from and after the organization of the state government wider the said constitution.
By section 10th it was declared “ that the laws of this republic relative to the duties of officers, both civil and military, of the same? shall remain in full force, and the duties of their several offices shall be performed in conformity with the existing laws, until the organization of the state government of the state under this constitution, or until the first day of the meeting of the legislature,” etc.
By these various provisions the sovereign will of the people of this republic was declared in accumulated and most perspicuous terms, that its government and laws should continue in force until the first day of the meeting of the legislature under the new constitution; and consequently, excluding until that period all- repugnant laws or jurisdiction, and every portion of the new constitution itself, of which a previous enforcement was not enjoined.
At the formation of this constitution, Texas possessed all the plenary attributes of sovereignty, and held an acknowledged rank among nations, as an independent republic.
She possessed like powers with the United States, to present terms and conditions on which she would consent to her incorporation as a state into the Federal Union, and the extension over her territory of the laws and government of the United States.
This is a self-evident proposition, and cannot be made more plain by argument or illustration. She possessed then, and rightly, the undoubted power to propose that her former government and laws should continue in full force until a designated period, and that proceedings should not until that time commence under the new governments, between which the powers of her old government had been distributed.
This stipulation being assented to by the other party would, on the principles of the international code and universal right, be of binding and mutual obligation on the parties.
let us suppose that the government of the United States had, •in express terms, proposed that the laws of this republic should continue in force until the organization of the state government, as a convenient period at which the new governments would be prepared to *(386) assume the exercise of the respective powers vested within their several jurisdictions, and that this proposal had been accepted by the republic of Texas. Could its obligatory force under such circumstances be at all problematical?
If its obligation when presented by the United States would be indisputable, it must possess the like validity and authority when offered by Texas, and approved of by the federal government.
Nor is the continuing operation of the former laws up to the organization of the state government incompatible with the nature or qualities of the compact or the respective rights and obligations of the parties to the same. *
It must be conceded that the parties to a treaty, a league, a confederation or constitutional compact, may mutually agree that the treaty or constitution shall by certain acts be fully established between the pai’ties at a certain time, but that it shall not until a more distant period go into force and operative effect.
Even ordinary acts of legislation are frequently, by express provisions, without force or authority, until the lapse of some time subsequent to their adoption, and the history of constitutions will show that they are generally established and finally acted upon some time previous to the commencement of their operation.
But the early history of the constitution of the United States furnishes conclusive proof of the correctness of the proposition, that a constitution may be established, and ,yet remain for months without force or activity, and that a union between confederating parties may be completed and the instruments of confederation be fully ratified and finally acted upon, and yet the former government and laws of the contracting parties may continue in operation for a long period subsequent to the complete and perfect sanction of the new compact or form of government.
The seventh article of the constitution of the United States contains the declaration that the ratification of the convention of nine states should be sufficient for the establishment of the constitution between the states so ratifying the same. This constitution after having been ratified by eight other states was, on the 21st June, 1788, assented to by New Hampshire, being the ninth state, and was then, by its own terms, established between the states, which had convened in its ratification.
These states had taken final action on the form of government submitted to them, and this had resulted in the establishment of a constitution replete with great and mighty changes in the respective powers of the general and state governments, and in the very character itself of the federal government.
*(387) On the ratification of the ninth state a new union had been formed. Instantaneously on the completion of this act of ratification, the assenting states became members of this new confederacy, but it entered into the imaginations of none that by the establishment of the constitution, the mere mutual incorporation of the states in a new union, the old confederacy was at once abrogated, the government under it extinguished, or that the constitutions or laws of the assenting states were modified, or their governments stripped of a single power which they had possessed or exercised.
That this would be the operation of the establishment of the constitution of the United States was clearly not imagined by the convention that framed that instrument, as their debates show that they entertained an opposite opinion.
The organic basis had been established, further measures were deemed necessary to infuse active power and energy into their new political creation — and accordingly, the .congress of the old government proceeded to take such measures, and after a long debate passed an act for that purpose, which, among other things, provided that on the fourth of March, 1789, proceedings should commence under the new constitution.
Thus a period of eight months intervened between the establishment of the new constitution and union and the organization of any government under the same or the actual force and effect of any of the grants, provisions or powers of the said constitution. The former government of the confederacy continued in vigor or, at least, in potential existence, during the whole interval — the states collected their impost duties, and could at pleasure in their legislation disregard the prohibitions of the constitution.
That these were not respected in the interval between the establishment and the operation of the constitution is a fact founded upon the history of the times, and that they were of no binding obligation has been judicially determined by the supreme court of the United States. The question before that tribunal was, whether an act of the legislatures of "Virginia, passed in ,1788, was within the operation of that provision of the constitution of the United States, prohibiting states from passing laws impairing the obligation of contracts. It was declared, in substance, that both governments could not be understood to exist at the same time. That the new government did not begin until the old one expired; that it did not commence on the ratification of the ninth state, nor until the first Wednesday of March, 1789, and that, therefore, the provision that a state shall pass no law impairing the obligation of contracts does not extend to a state law *(388) enacted before tliat day, and operating upon, the rights of property vested before that time. See Owyns v. Speed et al. 5 Wheat. 420; 4 Cond. 714.
It is thus very manifest that a constitution may be established — a union of two or more sovereignties be fully completed without any immediate change of the laws or government of the country.
J3ut it is urged, that by the assent of Texas to the overture for annexation, she agreed that at the moment of the acceptance of her constitution by the congress of the United States, all of her laws repugnant to those of the Union should cease and that those of the United States should at the same instant be in full force throughout her territorial limits. It should be remembered that this assent, whatever may be its extent or obligation, was incorporated with the constitution and must, by all legitimate rules of construction, be expounded in connection with other provisions of that instrument, or at least, with those having the nature and effect of a stipulation between the parties.
But admitting that it may be considered separately, what is the full extent and operation of this assent on the part Of the people of Texas? She consented to be organized into a new state with a republican form •of government, to be adopted by the people of said republic, and that this constitution which she consented to frame should be laid before congress for its final action on or before the first day of January, 1846.
Is this an agreement that the final and favorable action of congress on that instrument should at once introduce the jurisdiction and laws of the United States? Or, is it not only and simply to transmit to that body the constitution of the new state, which was to be subsequently organized on its provisions, that they might ascertain if it was republican in form and without provisions or stipulations repugnant to the rights or powers of the general government? And surely with the understanding that if the congress approved of the constitution which they had proposed should be formed by the people, and forwarded for that purpose, its provisions and stipulations would then be binding on both parties, and that neither the laws of the United States nor the constitution itself could be in force until the time stipulated for and ordained in that instrument had arrived.
The constitution of the United States authorizes the admission of new states, and to every state a republican form of government is guarantied. The approval of a constitution extends principally to its republican form, but the mere approval of a constitution would not of itself, even admit a new state, but the act of admission, of the ex *(389) tension of the laws and jurisdiction of the United States over the territory of a new state, and those under which the officers for the administration of justice and the collection of the revenue are appointed, and post-offices and roads established, are distinct and separate exer* cises of power. Some of these may be embraced in the law approving the constitution, not because they form a whole, composed of inseparable parts, but from the convenience of accomplishing several objects by the same law.
If the approval of the constitution of Texas would not, ex necessitate, destroy all her old laws and extinguish them and her government together for twenty days, or one month before the community living under those laws and that government could possibly be apprized of the fact, then the right of Texas to stipulate for and determine the time at which the change of government and laws should occur is unquestionable.
And this being proposed by her and accepted by the United States is of paramount obligation, rendering the acts of either repugnant thereto, null and inoperative.
It was insisted that this stipulatory provision should have been presented by Texas, in a distinct and separate resolution; and should not have been embodied in the constitution. This objection rests on no solid foundation. The negotiations between the two powers were carried on throughout, by the cumbrous process of alternate legislation, and not by the ordinary interchange of diplomatic intercourse.
A proposition for annexation had, for the first time, been made by the United States to a foreign nation, and that proposition emanated from the legislative branch of that government. The whole proceeding was anomalous in its character. And the question is not, whether the whole proposition or any particular portion thereof was presented in the proper mode,. but whether it received the parties. This once given obviates all objections both of form and substance to the proposition.
But supposing the constitution to be approved, the subsequent admission of the state into the Union does not, of itself, extend the laws of the United States over a nation which had been previously a separate and independent sovereignty.
The proposals for the mutual incorporation of the sovereignties may have been fully assented to; may have received the final action of both parties, resulting in a complete union; but it may very properly be one of the very conditions of the compact, that the old government and laws should, for a limited period, continue in full force and effect.
*(390) That the mere admission of a state does not, of itself, extend the laws of the Union over its territory, is exemplified in the history of such admissions. North Carolina and Rhode Island, two of the original states, not having assented to the constitution of the United States before the new federal government was organized, were treated in many respects as foreign states. The assent of North Carolina was not communicated to the government of the United States before the 11th January, 1790. By that act she became one of the states, but special legislation was required to extend the laws of the United States over her territory. No law was passed for that purpose before the eighth of the succeeding February, and the laws regulating imports were, by special provision, not to be enforced in that state until thirty days after the passage of the said act.
It would be tedious to detail the legislation subsequent to the admission of a state and consequent thereon. The reference which has been made will show that a state may be, for months a member, of the Union, without any of the laws of the United States being in force in her territory. That admission of a state is one act, and the extension of tire laws and jurisdiction of the Union is another and distinct exercise of authority. This discussion of the mere effect of the approval of a constitution or the admission of a state might seem to be unnecessary. But as they were to some extent relied on by the defendants in error, we have deemed it advisable to take this cursory notice of questions which were raised.
Was there anything unreasonable in the provision continuing the former government and laws, until the organization of the state government, which was directed to take place at the earliest possible period after the notification of the approval of the constitution by the congress of the United States?
The condition of Texas was in many respects, in contrast with that of a territory about to be organized into a new state and admitted into the Union. A territory is but a corporation of the government of the United States founded on the laws and supported out of the treasury of the Union. These laws are in full force and active operation within the limits of the territory during the whole period of its transmutation and elevation to the rank and dignity of a sovereign member of the confederacy. And on her admission as a state, she is invested with powers of sovereignty not inherent in her primary, inferior corporate condition. But on the annexation of an independent nation, several of the highest powers of sovereignty are relinquished by the nation and granted to the general government. But these powers cannot be enforced by the federal government with *(391) out special legislation for that purpose, nor can this legislation operate immediately in a distant portion of the republic. All the powers of both the general and state governments should he simultaneously executed in the same territory, in order to preserve the tranquillity, Becure the foreign and domestic relations of the community and to enforce the enjoyment of all the rights, civil, social, domestic and political, which are the primary objects of the establishment of a government, and are duties of a paramount obligation. All these high sovereign powers were vested in the republic, and that portion of them ceded to the federal government must, during the preparatory measures of that government to assume their exercise, be enforced by the government of Texas; or they must be in abeyance.
The post-office establishment would cease; there would be a portion of the time in which no tariff could be collected. All the rights of the general government, if incapable of enforcement except by itself, would as it were he extinguished. The protection afforded the citizens from the exercise of these powers would not be extended, and the violation of them could be perpetrated with impunity. Under such circumstances, this security can be afforded and these crimes punished only by the former government continuing in the full exercise of all its original powers until some designated period, when the new coordinate governments shall be prepared to assume their functions and enforce the powers incident to their respective jurisdictions.
What is more reasonable then than the establishment of a definite period for the extinction of the old government and the operation of the now conjoint authorities?
The object of the convention in appointing the day for the organization of the state government, as the period for the cessation of the old and the inceptive force of the new authorities, was to prevent confusion, and this would have been completely attained had this provision of the constitution not at first escaped the attention of the congress of the United States.
That the act of the congress of the United States of the 29th December, 1846, extending the laws of the Union over the territory of Texas, if intended, as appears from its terms, to operate immediately, was adopted through inadvertence, is manifest from the provision of the act by which certain post routes were established in Texas, approved, May the 29th, 1846. By the third section of that act, the postmaster general was authorized to pay mail contractors in Texas for services duly performed by them since the 16th day of February, 1846; and, also, that several postmasters, appointed by the late government of Texas, should pay to the postmaster general all bah *(392) anees acerning at their offices, from and after the said 16th of February, 1816; and all laws concerning the postoffice department and the regulations thereof were declared to have full effect and operation in said state, from and after the said 16th of February, aforesaid.
These provisions of this posterior statute afford unequivocal proof of the deliberate recognition by congress of the binding obligation of the declaration in the constitution, that the former laws should continue in force until the organization of the state government, and consequently excluding the laws of the United States regulating the postoffice and all other subjects until the 16 th February, 1846.
Any other supposition than that the laws of the 29th December, 1845, were passed through inadvertence, would impute to that government an attempt to sieze upon the revenues of the republic arising from imports, while for fifty days afterwards she threw upon the treasury of Texas, thus crippled, the burthen of the mail transportation and service generally. Any construction which would result in an imputation so slanderous cannot be legitimate, and must be rejected, when the acts of the party are susceptible of a different and more natural and just explanation. But whatever may be the grounds on which the law of the 29th December, 1845, extending the laws of the United States over Texas, may be explained or defended, or whatever may be the proper construction of the act, we are of opinion that neither the constitution or laws of the United States were in force within the limits of Texas, until the day of the organization of the government of the state, viz., the 16th February, 1846. The convention and the people of Texas in their highest sovereign capacity, separate and distinct from all other nations or states, and uncontrolled by any earthly power, declared in the most solemn form in which expression could be given to their will, that the former laws of the republic should continue in full force until that day. And, thus, by necessity, excluded all other laws repugnant thereto up. to that period. This declaration was approved without hesitation on the part of the United States. It was not incompatible with any of the rights or powers of that government or the nature of the union formed between the two countries, and carried with it an obligation for as much force as any provision of the constitution or treaties of the United States.
To place this question in a different point of view, let us suppose that the government of the United States, instead of insisting upon the framing of a new constitution, had been satisfied with the old one, as an excellent model of a republican form of government, and had *(393) required only the assent of the republic of Texas to the constitution of the United States.
Could not this republic have rightfully embodied in its act of assent a provision that the constitution and laws of the United States should not operate in her limits until a specified period?
The constitution of the United States, as we have before seen, was not in force until some time after the assent of the associating states had been given, and their union had been completed.
Whether this would have been the proper process for the annexation of Texas, she being an independent nation, it is not our purpose to discuss. It is clear that the consummation of the union between the two people did not, indispensably, require the formation of a new constitution by. the republic of Texas. This is as obvious on principle as on the analogous facts characterizing the adoption of the constitution of the United States. By that constitution the powers of the general government were greatly enlarged, and its very character changed from one acting on organized communities, to one operating directly on individuals. The change was so great as to have produced an almost complete transformation. Tet, the constitutions of more of the original confederates were modified in adaptation to this great revolution in their political rights, powers and obligations — even Rhode Island, not admitted to the Union for more than fifteen months after the organization of the government, did not, nor was she required to remodel her royal charter by which for more than forty subsequent years she continued to be governed. The assent to the constitution of the United States swept away all repugnant provisions of the constitutions of the states. A new constitution was not then an indispensable preliminary to our admission as a state, but, when framed in accordance with a proposal made and accepted by the government of the United States, its provisions are of binding obligation on the parties.
There is nothing extraordinary or unusual under the like circumstances in Texas collecting import duties subsequent to the approval of her constitution, and if there were, it was under a special provision for that purpose.
After the establishment of the constitution of the United States, the several states did not on that ground, suspend their collections of imposts, even after the organization of the federal government on the 4th March, 1789, they still continued their collections, until the last day of the succeeding July, on which day the first tariff law of the United States was adopted. Nay, even after this period, .'hrough the months of August and in September, the state tariffs were *(394) occasionally enforced. No question relative to the duties paid under the state establishments before the 1st of August appears to have arisen, and whether the claim made £>y the government of the United States, for those collected subsequent to that date was persisted in, does not appear from any documents accessible to the court. See American State Papers, Finance, vol. 1, p. 45, No. 11.
The amount involved in this suit is small, but the principles are of the highest magnitude and enduring importance.
The extensive pressure of numerous important causes prevents a more detailed examination of the subject, and our attempt to present the reasons we have given in a more elaborate shape or a form more condensed.
"We are of opinion that the laws of the republic of Texas regulating imports continued in force until the 16th February, 1846, and-that all importations previous to that period were chargeable with duties in -accordance with those laws. The other ground has been abandoned or not insisted upon.
It is therefore ordered, adjudged and decreed that the judgment of the district court be reversed, and the court here proceeding to render such judgment as should have been entered up below,— it is ordered, adjudged and decreed that the plaintiff in error, James H. Cocke, do recover of the defendants in error the sum of nine hundred and sixteen dollars, being the balance of duties remaining unpaid, and also all costs expended in and about the defense of this suit.