Mr. Justice WOODBURY
 

 delivered the opinion of the court.
 

 I am instructed by the court to say its opinion in this case is, that it possesses no jurisdiction over the questions submitted. No other point is decided by us, though others of much interest are involved ih the merits respecting the due organizatiop of States, under our political system, and tjie effect which their admission into the Union by Congress has on the validity of their previous proceedings.
 

 Some contend, that when" these matters properly arise in a cause, they are mere political questions, — to’ be settled by the action of the other departments of .the government, and noi to be reexamined here, Barclay
 
 v.
 
 Russel, 3 Ves. 429; The Nabob of Arcot’s case, 2 Bro. Ch. 6; Foster et al.
 
 v.
 
 Neilson, 2 Peters, 309; The Cherokee Nation
 
 v.
 
 Georgia, 5 Peters, 20; Rhode Island
 
 v.
 
 Massachusetts, 12 ibid. 730, 736, 738;
 

 Garcia
 
 v.
 
 Lee, ibid. 517, 518.
 

 And it is árgued that the acknowledgment of a domestic State is like the recognition of the independence or existence of a foreign State ; and the latter is well known to preclude any further inquiry by the judicial tribunals into the fact of their due organization. See, on this, 5 Peters, 50, 59; 2 Cranch, 241; 3 Wheat. 634; 4 ibid. 64.
 

 It is further contended, that if a State be recognized or admitted into the Union under a particular form of government or constitution, this, of necessity, implies that such organic arrangement is to be treated as valid from its creation, and the previous legislation under it is to be considered as done or performed by a competent authority.
 

 But we do not find it a duty to decide any of these delicate and important questions, considering the situation of the record in this action and the preliminary points which arise on it, and which must first be disposed of.
 

 This being a writ of error to a State court, sued out with a view to reverse its decision in a case of ejectment between these parties, the only authority and the only ground for our interference with the decisions of the State tribunals. ,is, in substance, that they have overruled some right or defence, set up under an act of Congress, or treaty, or Constitution of the United States. 14 Peters, 46, 353; 12 Peters, 66; Williams
 
 v.
 
 Norris, 12 Wheat. 124.
 

 The principle under-which'the Judiciary Act of 1789 allows this interference of ours in the relations between the two governments,
 
 *375
 
 always of so sensitive and responsible a character, is? that no government can be efficient or just without the means of self-protection ; and hence, that those who act under it or claim rights beneath the shield of its laws should, within its own territory, be able to appeal to its own tribunals for relief whenever their claims under it are decided against in the courts of the States. But prejudices here are to be guarded against as well as .there ; and hence the paramount rule of construction, in all cases of this kind, ought to be, not to interfere at all unless the decision is shown to come clearly within the letter and spirit of the act of Congress permitting an appeal; and, when interfering, not to overrule the- judgment of the State court unless clearly erroneous.
 

 Firstly, then, is there a proper case presented here for'our interference at all ? Three instances , are enumerated in the Judiciary Act, in which a writ óf error lies to a State court, é. g. (1.) “ Where is drawn in question the validity of a treaty or statute of, or an authority exercised under, the United S.tates, and the decision is against their validity ; (2.) or where is drawn in question the validity of a statute of, or authority exercised under, any State on the ground of their being repugnant to the constitution, treaties, or laws of the United States, and the decision1 is in favor of such their validity ; (3.) or where is drawn in question the construction of any clause of the constitution, or of a treaty or statute of, or commission held under, the United States, and the decision-is against the title, right, privilege, or exemption specially set up or claimed by .either party under such -lause of said constitution, treaty, statute, or commission.” 1 Stat. at Large, 85, § 25.
 

 A claim is made to sustain this writ and our jurisdiction under the first specification, because an authority was set up by the original plaintiffs, that the deed to the Young Men’s Society was good under the acts of Congress, and this was excepted to by the defendant. But that cannot be made the subject of a writ of error, because the State court decided in favor of its validity. Gordon
 
 v.
 
 Caldcleugh et al., 3 Cranch, 268; Walker
 
 v.
 
 Taylor et al., 5 Howard, 64.
 

 Another decision, which was made by the State court against the right set up by the original defendant under acts of Congress in respect to his title, is attempted to be made a subject for reexamination under this writ. But it cannot be, for two reasons. One is, it does not appear*what acts of- Congress are referred to; and the other is the probability, on the face of the record, not that such acts were decided against, but only that the evidence adduced in relation to the right set up under them was overruled. Consequently, nothing remains under which to claim jurisdiction, except the second specification in the Judiciary Act. It is contended that the objection, which ,'wás made in this case to the validity of a statute of the State, on the ground that the legislature were riot com--petént or duly organized, under acts of Congress and the constitution,
 
 *376
 
 go as to pass valid statutes, and which was overruled, comes within that specification.
 

 The first difficulty interposed against this point is, that the plaintiffs in error do not in the record specify what parts of the constitution or act of Congress they consider to have been overruled by the State court, nor in terms that any parts of either were so overruled. The course pursued here is a looser mode of stating exceptions than is customary, and could hardly be sustained if it did not appear on the record that the competency of the legislature of -the State of Michigan to pass certain laws was in fact called direcdy in question, and. the validity of them contested, on the ground that, when the laws passed, the territorial government over Michigan was still in force, and the new State government had not been duly organized. And it seems to have been admitted on both sides that this objection was urged, — and it is difficult to conjecture any other ground for such an objection to the competency and power of the new State government, unless founded. oh its non-conformity to the existing acts of Congress as to the Territory, and the clause in the constitution for the admission of new States. The argument was a fair one, that, as the territorial government was still .in operation in Michigan for some purposes, no new political organization could take .place within its limits which was capable of passing valid laws or charters of incorporation, without á previous sanction by Congress, under the third article of the constitution.
 

 There probably is enough in this record to show that such questions were raised, and that the State court decided against the validity of the objection, and under this view and the authorities of the following cases we shall then treat this exception af sufficiently set out in the record. Coons et al.
 
 v.
 
 Gallager, 15 Peters, 18; Williams v. Norris, 12 Wheat. 117; McBride
 
 v.
 
 Hoey, 11 Peters, 167; Crowell
 
 v.
 
 Randell, 10 ibid. 368; M’Kinney
 
 v.
 
 Carroll. 12 Peters, 70; 5 ibid. 248.
 

 But the.exception, if well stated, applies to nothing except the validity of the particular statute that incorporated the Young Men’s Society, under which Jones, the original plaintiff, claims. Nor does it question the validity of that statute on account either of its terms or subject-matter, but the inability or incompetency of its makers as a political body to pass any statute whatever. Now to ascertain whether such an objection can come within the true meaning of the Judiciary Act, it will be necessary to look at the language as well as obvious design of the latter in conferring this searching and overshadowing power of revision over the State tribunals. As before suggested, it was to prevent partiality in them against the authority and agents of the general government ; to hold the protecting supervision in respect to its own constitution, treaties, and acts of Congress, for purposes of self-preservation and self-defence, and finally to insure uniformity in the construction and pperation of .them over the whole Union.
 

 
 *377
 
 Hence, two things must unite, in order to justify it. There must, be an act of solemnity and importance, such as a statute, and that statute must be by a State, a member of the Union and a public body, owing obedience and conformity to its constitution and laws. This seems to have been settled by this court as to the meaning of the word “ State,” where empowering one to bring an action. ' It must be a member of the Union. Cherokee Nation
 
 v.
 
 Georgia, 5 Peters, 18. And it is not enough for it to be an organized political body within the limits of the Union.
 

 In conformity with this,, where it is required that a party should be a citizen of a different “ State ” in order to give a Circuit Court jurisdiction, it has been held it is not sufficient to be a citizen of the District of Columbia (Hartshorn
 
 v.
 
 Wright et al., Peters’s C. C. 64; Hepburn et al.
 
 v.
 
 Ellzey, 2 Cranch, 445), or citizen of a Territory (New Orleans
 
 v.
 
 Winter, 1 Wheat. 90), but the party must belong to a State in the Union, one of the members of the confederacy. . Chief Justice Marshall, in Hepburn et al.
 
 v.
 
 Ellzey.
 

 Indeed, it has been séttled also, that a law passéd by Virginia, before the government of the Union took effect, cannot be examined and decided upon under, this clause of the Judiciary Act. Owings
 
 v.
 
 Speed et al., 5 Wheat. 420.
 

 The word's of this clause also appear to be such, as to. admit of no other construction than that the statute is .a measure by a body confessedly a State. They are, — “where is drawn in question the validity of a statute of, or authority exercised under, any State,” &c..
 

 Beside this apparent recognition, that nothing is to be examined which does not apply to what is contained in a statute, and that passed by a State, the evil to be remedied and guarded against was connected merely With , the subject-matter of. statutes, and not with the political competency of their makers.
 

 The fears were, from the reasons just enumerated, that through some inadvertence, if not design, a State.might legisláte against some part of the constitution, ór a treaty, or an act of Congress, and might trench upon matters not within its province nor belonging to' its internal concerns, but belonging to Congress, and which, by express terms or necessary implication, were forbidden to be acted, on by the State governments.
 

 Such being the evil or danger, it precludes the idea that this clause in the Judiciary Act had any reference to the fact, that public bodies which.had not been duly organized, and not been admitted into the Union, would, as States, undertake to pass laws, without being empowered to do it, which might encroach on the Union or its granted powers, and hence should be thus guarded against.Such conduct by such bodies; if not situated within the territory of the Union, would be a foreign', affair, and not within the cognizance of any of the departments of this government, unless so inter
 
 *378
 
 fering with its rights as to call for the political exercise of the executive and legislative authority over our foreign relations.
 

 Again, such conduct by bodies situated within our limits, unless by States duly admitted into the Union, would have tq be reached either by the power- of the. Union to put down insurrections, or by the ordinary penal laws of the States or Territories within which these bodies unlawfully organized are situated and acting. While' in that condition, their measures are not examinable at all by a writ of error to ihis court, as not being statutes by a State, qr a member of the Union. And after such bodies are recognized as having been duly organized, and are admitted into the Union, if they ever be, the judicial tribunals of the general government, which' acquiesces in the political organization that has been professing to pass statutes, and which admits it as a legal and competent State, must treat its statutes passed under that organization as they would the statutes of any other State, within the meaning and spirit of the Judiciary Act. And, if so,, we must inquire only into the validity of their subject-matter, and not as to the new, any more than the old, States, ever suppose that the question of their political competency or power to pass' statutes at all was an inquiry intended to be placed under our consideration and decision by the twenty-fifth section of the Judiciary Act.
 

 It follows, then, that a statute, passed by a political body before its admission into the Union, seems either not to be one, under the cognizance of the Union or its judicial tribunals, by means of § 25 of the Judiciary Act, unless reenacted or adopted after becoming, a State (3 Howard, 482) ; then it is treated like the statute of any State ; or the admission of the State into the Union by Congress, subsequently with the constitution and political organization under which the statute was passed, must bring it under our consideration as a statute passed by the State, -— a conipetent State, —- leaving, as in other cases, merely its subject-matter to be examined in order to see if it violates or not any acts or provisions of the general government.
 

 • The question of their competency is not, however, thus made a closed one, but maybe discussed before the proper political tribunals. And where, under particular laws, their competency is not conceded, it may come under the consideration and decision.of the State courts, and probably of those of the .United States. All we decide'in this instance is, that it is not one of the grounds for our reexamination of decisions on it, under the Judiciary Act. And it is no more objectionable to shut out such a question from revision in that way,' than numerous others which are not, included either in the words or objects of that act. Indeed, there were, and still are, some of the highest 'motives of expediency and sound public policy not to entangle this court with the reconsideration in this way-of a matter so purely.political and often so full of party agitation. It is pretty
 
 *379
 
 strong evidence that this view of the Judiciary Act, and our duties under it, must be the correct one, when, on full examination of the precedents, no case can be found where an ohjection of this .character to a statute of a State has ever been sustained, or deemed even a proper ground for exception below, and afterwards brought under the revision of this court by a writ of error. The case of Owings
 
 v.
 
 Speed et al., 5 Wheat. 421, before cited, comes'nearest to this. Taking it for granted, then, we have shown that the revision in a case like this must be of a “ statute ” and a statute of a “ State,” and not of a Territory, or corporation,"college, or unacknowledged political body, and considering these as concessions, or admitted data,'before the jurisdiction arises to issue a writ of error, and look into the subject-matter of such statute in order to ascertain whether in its terms or operation it runs counter to the powers of .the general government, and that it is acknowledged on both sides there is nothing exceptionable in the subject-matter of this statute, it follows that there is nothing to revise or correct, which is within the purview of the judicial functions of the general government under the Judiciary Act.
 

 Let the writ of error be dismissed for want of jurisdiction.
 

 Mr. Justice McLEAN.
 

 I think there is jurisdiction in this case. The Detroit Young Men’s Society, in their corporate capacity, brought an action of ejectment against Scott and Boland to' recover possession of the lot in question.
 

 The deed under which the lessors of the plaintiff claimed was dated the 1st July, 1836, and was signed by three judges of the Territory of Michigan. In making the conveyance, the judges acted undeij a law of Congress of the 21st April, 1806. As regards this question, it is not important to examine the execution of this trust.
 

 On the trial it was proved - “ that a legislature of the State of Michigan, duly elected and returned, was organized and duly qualified under the constitution of the State of Michigan on the 3d November, 1835 ; and that Stevens T. Mason, having been duly elected and returned, was on the same day qualified as governor, &c. That the act entitled £ An act. to incorporate the members of the' Detroit Young Men’s Society’ was approved 26th March, 1836.”
 

 It was proved, by reputation, that John S. Horner purported to act as territorial governor of Michigan until some time in the year 1836, and that George Morell and Ross Wilkins acted as judges until June -of that year. That a session of the territorial Court was held on th'e first Monday of January, 1837.
 

 The State of Michigan was admitted into the Union by the act of the 26th January, 1837.
 

 On the trial, the counsel moved the court to instruct the jury, that the act u to incorporate, the members of the Detroit Young
 
 *380
 
 Men’s Society” was not of binding force, “ unless the jury should; find that the State government of the State of Michigan was, at the time of the passing and approval of said act, established, and in full and legal force and operation.”
 

 The twenty-fifth section of the Judiciary Act of 1789 provides, “that a final judgment or decree in any suit, in. the highest-court of law or equity of a State in which a decision in the suit could be had, where is drawn in question ” “ the validity of a statute of, or an authority exercised'under, any State, on the ground of their being repugnant to the constitution, treaties, or laws of the United States, and the decision is in favor of such their validity,” may be reexamined in this court by a writ of error.
 

 This act of incorporation was given in evidence, as a part of the plaintiff’s title; and on the validity of the act his right to a recovery depended. The deed having been made to-the lessors of the plaintiff as corporators, they- could recover only .in that capacity. The validity of this statute was questioned, as appears from the record, on the ground that it was passed before the State was admitted into the Union ; and the court held that the statute was valid. By the constitution, Congress has power to admit into the Union “new States.” The time of admission is a question of law, and not a political, question. ■ At the present term we have had occasion to decide the date of the admission into the Union of the States of. Florida and Iowa.
 

 The above facts present the very casé provided by the statute for the exercise of jurisdiction'by this court. A right was set up under the statute of a State, and that statute was alleged to be repugnant to the constitution and laws of the United States ; and the decision of the State court was in favor of the validity of such statute. No case, it would seem, could arise, more completely within the letter and spirit of the twenty-fifth'section.
 

 It is said that the act upon its face does not purport to be repugnant to the constitution or laws of the United States. If this be admitted, it by no means follows that the act is constitutional. Whether constitutional or not must be determined by the effect of the act. But in my judgment this act is repugnant to the constitution and laws of the Union.
 

 Michigan was an organized Territory of the United States. Its governor, judges, and all other territorial officers, were in the discharge of their various functions. The sovereignty of the Union extended'to it. .Under these circumstances, the people of Michigan assembled by delegates in convention,, and adopted a constitution, and under it elected members of both branches of their legislature, governor,' and judges, and organized ■ the State government. No serious objection need be made, in my judgment, to the assemblage of the-peóple in convention to form a constitution, although it is the .more regular and customary, mode to proceed under the sanation of
 
 *381
 
 an act óf Congress. But until the'State shall be admitted into the Union by act of Congress, the territorial government remains unimpaired.
 

 No act of the people of a Territory, without the sanction of Congress,'can change the territorial into a State government. The constitution requires the assent of Congress for the admission, of a State into the Union ; and “ the United States guaranty to every State in the Union a republican form of government.” Hence the necessity, in admitting a State, for Congress to examine its constitution.
 

 The act “ to incorporate the members of the Detroit Young Men’s Society,” was the exercise of sovereign power, — a power totally repugnant to the sovereignty of the Union, in its territorial form. Until the 26th of January, 1837, Michigan was not admitted into the Union and -recognized as a State. Whatever effect this admission may have, by way of relation, on the exercise of the political powers of the State;prior to that time, is not now,a qúestion. The question.of jurisdiction relates to the time the act was passed,, and its validity.
 

 This act of incorporation was repugnant to the constitution of the' United States, under which .the, territorial government was organized. It was repugnant to the laws of Congress which formed that organization. It was an exercise of sovereignty incompatible with the sovereignty.of the Union, in all its legal forms. And this act was declared' by the Supreme Court of Michigan to be valid. I cannot conceive of a clearer case for jurisdiction.
 

 In Holmes
 
 v.
 
 Jennison, 14 Peters, 540, the governor, in the exercise of a supposed power in the State, directed a fugitive from justice, claimed by the Canadian government, to be delivered up ; and the Supreme Court of that State, having brought the accused before. it by a
 
 habeas
 
 corpus, remanded him to custody. This court, under the twenty-fifth section, took jurisdiction of the case, on the ground, in the language of the chief justice, “ that the exercise of the power in question by the States is totally contradictory arid repugnant to the power granted to .the United States.” And again he says,— “ All the powers which relate to our foreign intercourse are confided jto the general government.” “ If there was no prohibition to the- States, yet the exercise of such a power on their part is inconsistent with the power upon the same subject conferred on the United States.”
 

 Now, in the case of Holmes, there was no power to surrender the fugitive in the federal government, as such power was not conferred by the laws of nations, but must be given by a treaty, or by reciprocal legislation. Sbll, as the foreign intercourse was vested in the general government, no part of it could be exercised by the States without .conflicting with the federal power. Now the conflict of power, in the case under consideration, is clear and direct.
 
 *382
 
 The two sovereignties of the State and the territorial government cannot exist at the same time within the same limits. The territorial government exists in full vigor until it is abolished by the admission of the State. There was, then, a direct and irreconcilable repugnance in the exercise of the- sovereign power by the State, so long as the federal authority was exercised in the Territory.
 

 Mr. Justice DWAYNE concurred, that this court had not jurisdiction in this case, but did not assent to any conclusions in the opinion on the merits'in this controversy involving the political relations of Michigan with the United States before Michigan was admitted into the Union.
 

 Mr. Justice NELSON concurred with' the opinion of Mr. Justice McLean.
 

 Order.
 

 ■
 
 This cause came on to be heard on the transcript of the record from the Supreme Court of the State of Michigan, and was argued by counsel. ; On'consideration whereof, it is now here ordered and adjudged by this' court, that this cause be and the same is hereby dismissed, for the want of jurisdiction.